IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JERRY K. CHAMBLISS )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>NATIONAL RAILROAD PASSENGER )<br>CORPORATION, et al. )<br>)<br>Defendants. )<br>_____ ) | Civil Action No. 1:05CV02490-CKK |

### DEFENDANTS' STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

In support of their Motion for Summary Judgment and in compliance with Local Rule 7(h) of the Rules of the United States District Court for the District of Columbia, defendants National Railroad Passenger Corporation and Steven Snyder designate the following material facts not in dispute:

1. Plaintiff Jerry Chambliss was first employed by defendant National Railroad Passenger Corporation ("Amtrak") in 1989. Deposition of Jerry Chambliss ("Chambliss Dep. at 9") (All excerpts from Chambliss Deposition are attached hereto as Exhibit A).

2. Throughout his employment, Chambliss was repeatedly cited for violations of Amtrak's attendance policy, insubordination, and other examples of misconduct. Disciplinary Records, Exhibits 1-12 to Chambliss Dep. (a copy of which is attached hereto as Exhibit B); Decision dated August 12, 2004, Exhibit 20 at 2 (a copy of which is attached hereto as Exhibit C).

3. Defendant Steven Snyder supervised Chambliss during the time period relevant to this Complaint for at least one day a week. Chambliss Dep. at 82.

4. On May 10, 2004, Snyder threw a safety pamphlet at Chambliss. Chambiss Dep. at 70.

5. The Company investigated Chambliss' claims regarding the May 10, 2004 incident and Snyder's conduct. Statement of C.M. Bello, Exhibit 16 to Chambliss' Dep. (a copy of which is attached hereto as Exhibit D); Amtrak Police Report, Exhibit F to Chambliss Dep.) (a copy of which is attached hereto as Exhibit E).

6. Snyder explained this incident as a joke and stated that he was kidding around. (a copy of Chambliss Deposition Exhibit 15 is attached hereto as Exhibit F at 3-4) (statement of Steven Snyder); Exhibit D (statement of C.M. Bello).

7. The safety pamphlet weighed approximately four ounces. Arbitration Award, Exhibit 22 to Chambliss Dep. ("of such miniscule weight – 4 ounces") (a copy of which is attached hereto as Exhibit G).

8. The pamphlet struck Chambliss in face, but did not move his glasses. Chambliss Dep. at 88.

9. Chambliss was not hurt in the incident. Exhibit B (Chambliss Statement), Exhibit D (statement of C.M. Bello); *see* Chambliss Dep. at 86-87. *See also* Exhibit E at 3 (police report; "no injuries reported); *see* Chambliss Dep. at 95.

10. Chambliss continued working after the incident and completed entire his assigned shift. Chambliss Dep. at 96.

11. Chambliss decided that he was injured on May 11, 2004. Chambliss Dep. at 97.

12. Chambliss was out for work from May 11 until May 17, 2004. Dep. at 97; *see* Chambliss Dep. at 99 (out from May 10 until May 17).

13. Chambliss failed to notify any company official of his claimed injury until he returned to work on May 17, 2004. Chambliss Dep. at 138-141.

14. Chambliss failed to file an accident report until June 14, 2004. Exhibit 18 to Chambliss Dep. (a copy of which is attached hereto as Exhibit H).; *see* Exhibit 19 to Chambliss Dep. (injury: pain to face and nose area; reported 10:00 a.m. June 14, 2004) (a copy of which is attached hereto as Exhibit I).

15. Chambliss was aware of Amtrak policy requiring employees to file an injury report promptly after a workplace injury and had complied with this policy during his numerous prior work place injuries. Chambliss Dep. at 108; Exhibit C at 2.

16. The Company investigated Chambliss' conduct. Amtrak determined that Chambliss had committed three significant violations of Amtrak policy. Exhibit C.

17. Amtrak established that Chambliss had violated the company's National Systems Attendance Policy. National Systems Attendance Policy, Exhibit I to Declaration of Christine Turnblacer (a copy of which is attached hereto as Exhibit J).

18. Chambliss had six occurrences of absence or tardiness in a ninety day period.

| | | |
|---|---|---|
| 1. | May 3, 2004 | Sick |
| 2. | May 11-13, 2004 | Sick (not reported as an injury) |
| 3. | May 16, 2004 | Sick |
| 4. | June 13, 2004 | 22 minutes late |
| 5. | June 16, 2004 | 1 hour, 18 minutes late |
| 6. | June 17-20, 2004 | Unexcused absence |

Exhibit C at 2; *see* Exhibit B (denying leave for June 17 and June 20, 2004).

19.     The investigation established that Chambliss failed to timely report the injury he allegedly suffered as a result of the May 10, 2004 incident. Exhibit C.

20.     Amtrak employees are required by the Company's Standards of Excellence to "immediately report to your supervisor all injuries and illnesses that occur. . . . Standards of Excellence, Exhibit II to Declaration of Christine Turnblacer (a copy which is attached hereto as Exhibit J).

21.     Amtrak also determined that Chambliss had failed to deal honestly and accurately with his supervisors regarding this incident and his alleged injuries. Exhibit C. The Standards of Excellence sets as company policy that employees "will always tell the truth. Exhibit J.

22.     Based on this investigation, and for each of these reasons, Amtrak decided to terminate Chambliss' employment, effective August 12, 2004. Exhibit C at 4. ("[u]pon review of the findings of this Hearing and a review of your past Discipline Record, I find that my only option is to terminate your Employment with Amtrak as of August 12, 2004").

23.     Chambliss filed a grievance regarding his termination, which was arbitrated in accordance with the applicable collective bargaining agreement. Chambliss Dep. at 129-30.

24.     On January 20, 2006, the arbitration board issued an order reinstating Chambliss without back pay. Exhibit G. (emphasis added).

25.     In relevant part, the panel held:

> Upon careful consideration of the record, the Board concludes that the Claimant violated the Carrier's well-established policy governing the reporting of industrial injuries. We further conclude that *his explanations for that failure are unpersuasive.* Had he complied with those rules, all

> questions and concerns of both parties may have been able to be addressed. Thus his absence commencing May 11 was unauthorized. Swirling around that judgment, however, the Board's serious concern as to whether Carrier has established a case for its principal charge: intent to defraud.
>
> The time Claimant missed on this occasion was a violation of Carrier's national System Attendance Policy. Standing alone, however, attendance issues would not in our judgment warrant dismissal. Termination thus rests chiefly upon the charge of falsifying an injury. Notwithstanding the suspicious circumstantial evidence, in our view that evidence is inconclusive. The record speaks to a situation in which the Claimant allowed himself to become emotionally distraught as he brooded over the pamphlet tossing incident, ultimately convincing himself that it was deliberate, that he had been struck a serious blow, and that he had been singled out for mistreatment. *It is, of course, a mark and measure of adulthood to modify the impulses that sometimes surge up, to exercise judgment, to organize behavior and decision-making and to learn and adhere to the rules of everyday life. In becoming emotionally flustered and retiring from his job obligations, Claimant simply failed to meet his employer's reasonable standards.*

Exhibit G at 3-4. (emphasis added).

26. Amtrak reinstated Chambliss. Chambliss Dep. at 196-199.

27. In June 2004, Chambliss filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). Charge of Discrimination, Exhibit 14 to Chambliss Dep. (a copy of which is attached hereto Exhibit K).

28. This charge was filed Baltimore and then sent to Washington, D.C. Chambliss Dep. at 58.

29. Chambliss was uncertain of the exact date when he filed his charge. Chambliss Dep. at 58; *see* Exhibit K.

30. Chambliss was uncertain of the date when the Charge was filed with the Washington, D.C. office. Chambliss Dep. at 58.

31. Chambliss was uncertain whether his Charge was filed with the D.C. Office of Human Rights. Chambliss Dep. at 58.

32. The EEOC investigated Chambliss' charge and issued a Notice of Right to Sue letter, dated September 30, 2005. Notice of Right to Sue, Exhibit 23 to Chambliss Dep. (a copy of which is attached hereto as Exhibit L).

33. On December 30, 2005, Chambliss filed a complaint in the United States District Court for the District of Columbia. The complaint named Amtrak and Stephen Snyder as defendants and stated five counts: (1) race discrimination under Title VII of the Civil Rights Act and section 1981 (against both defendants), (2) retaliation under Title VII of the Civil Rights Act and section 1981 (against Amtrak only), (3) assault and battery (against Snyder only), (4) intentional interference with economic relationship (against Snyder only); and (5) intentional infliction of emotional distress (against Snyder only). Complaint.

Dated: July 7, 2006

Respectfully submitted,

KRUCHKO & FRIES

By: _John Kruchko/KF_
John G. Kruchko

_Keith Fischler_
Keith Fischler
D.C. Bar No. 377601

OF COUNSEL:
KRUCHKO & FRIES
Tysons Blvd., Suite 560
McLean, Virginia 22102
(703) 734-0554

Counsel for Defendants
National Railroad Passenger 1750
Corporation and Steven Snyder