NATIONAL MEDIATION BOARD
PUBLIC LAW BOARD NO. 6315

Parties to dispute:

SHEET METAL WORKERS INTERNATIONAL ASSOCIATION

vs.

NATIONAL RAILROAD PASSENGER CORPORATION

)
)
)
)
)
)
)
)
)
)
)
)

**OPINION AND AWARD**

Case No. 7
Claimant Jerry Chambliss, Sr.

## CLAIM OF EMPLOYEES:

1. "The National Railroad Passenger Corporation violated the Collective Bargaining Agreement when they improperly terminated Sheet Metal Worker Jerry Chambliss on August 12, 2004, as the result of an investigation that was held on July 29, 2004, at the Amtrak High Speed Rail Office, 2nd floor, 14301 W Street, N.E., Washington, DC 20018, on the following charges:

   SPECIFICATION: Between May 1, 2004 and June 2, 2004 you allegedly had excessive absenteeism occurrences. This constitutes a violation of Amtrak's National Systems Attendance Policy.

   Violation of Amtrak's Standards of Excellence. Specifically, the section(s) pertaining to "Safety" read in part: "Immediately report to your supervisor all injuries and illnesses that occur..."

   SPECIFICATIO0N: While assigned as a pipefitter with High Speed Rail on May 10, 2004, you allegedly sustained an injury. This injury was not reported in a timely manner.

   Violation of Amtrak's Standards of Excellence. Specifically, the section(s) pertaining to "Truth and Honesty" and "Integrity" read in part: "We will always tell the truth."

   SPECIFICATON: While assigned as a pipefitter with High Speed rail you allegedly claimed an injury sustained on May 10, 2004. When asked by supervision and Amtrak Police Department you claimed no injury at the time the alleged incident.

DEFENDANT'S EXHIBIT G

OPINION AND AWARD -            Case No. 7 Public Law Board No. 6315

> That accordingly, the Carrier be required to reimburse Mr. Chambliss for all time and benefits lost as a result of this violation and return him to service immediately with all seniority rights unimpaired."

**FINDINGS:**

The Board finds that the parties herein are Carrier and Employee as defined by the Railway Labor Act, as amended; that the Board has jurisdiction over this dispute; and that due notice of the hearing thereon has been given to the parties.

On July 14, 2004 Claimant Chambliss was directed to report for a series of investigations commencing on July 22, 2004 to determine his responsibility in connection with the charges stated in the Claim. Following a postponement, the hearings went forward on July 29, 2004 and by letter dated August 12, 2004 Claimant was dismissed from service effective immediately. The Organization took exception to that action, appealed the matter to successively higher levels of management up to and including Carrier's highest officer designated to hear such appeals, and then brought the case to this Board for final and binding determination.

The record before us indicates that the dispute arose from an incident that occurred on May 11, 2004 in which a Carrier Foreman allegedly tossed a safety rule book (or *pamphlet*, in Carrier's view) at (or *to*, in Carrier's view) the Claimant following a safety briefing in a lunch room. The booklet struck Claimant on or near his face. Claimant spoke with Carrier's Assistant Superintendent immediately and with Amtrak police later that day, apparently around 2 p.m., to report a simple assault, but according to the Police report received in evidence, which closed the case the same day, he did not complain of any injury. Claimant then completed his shift but that evening spoke with a Carrier mental health support counselor. The following day he complained of a headache and sore nose, saw a doctor and then marked off work for 4 work days, May 12 through 13. His scheduled rest days were May 14 and 15.

The record compiled in this matter is substantial. No useful purpose is seen in an exhaustive summary of it. Broadly rendered, the Organization takes the position that Claimant's dismissal was unjustly severe and an abuse of management discretion; that Claimant did not receive the contractually guaranteed fair and impartial investigation; that

2

Amtrak/Chambliss2

OPINION AND AWARD -                               Case No. 7 Public Law Board No. 6315

Carrier has failed to give sufficient account to the dangerous actions of its own supervisor in throwing a safety book at Claimant, who has only one good eye; has unreasonably rejected the reports of Claimant's personal physician in concluding that he fraudulently claimed injury; and has delayed looking into the incident and refused to act on it when it finally investigated.

The Carrier argues that while it does not condone the idea of throwing materials at people, this was a simple accident. A pamphlet thrown in the lunch room accidentally struck Claimant, but it was of such miniscule weight--4 ounces--it did not even knock his glasses off. He reported no pain or injury either at the time or later that day, and although he informed General Foreman Bello of the incident, he did not report any injury. He completed his tour, picked up his children and only the next day claimed he had been hurt. He then remained out of work until May 17, all the while failing to report his injury to the Company until his return. By his actions he deprived Amtrak it of its right to send him to a Company doctor to determine whether he had been injured and, if so, how seriously.

The truth is too obvious to need spelling out--proven falsification of on-the-job injuries is misconduct for which railroad managements rarely show leniency and for which rail referees normally show little tolerance. In that regard, here we find much in Carrier's case that forces itself upon our attention. For example, and making no attempt at completeness, it is difficult to understand how Claimant could have incurred a disabling injury under the circumstances, or if so, in view of his past history with injury claims—6 injuries in 2004--how he could have been unfamiliar with proper reporting requirements. Thus Carrier's antennae were up, and not unreasonably. Nor did the statement submitted by Claimant's physician—which merely recorded Claimant's complaints of "headache," "nasal pain,' and "anxiety," go very far to assuage those concerns. In sum, Claimant's testimony is not marked by bracing forthrightness, and given that fact, his inconsistent behavior and his delay in making a timely injury report, Carriers skepticism about his inability to report to work between May 11 and May 17 is easily understood.

Upon careful consideration of the record, the Board concludes that Claimant violated Carrier's well established policy governing the reporting of industrial injuries. We further conclude that his explanations for that failure are unpersuasive. Had he complied with

3

OPINION AND AWARD -                              Case No. 7 Public Law Board No. 6315

those rules, all questions and concerns of both parties may have been able to be addressed. Thus his absence commencing May 11 was unauthorized. Swirling around that judgment, however, is the Board's serious concern as to whether Carrier has established a case for its principal charge: intent to defraud.

The time Claimant missed on this occasion was a violation of Carrier's National System Attendance Policy. Standing alone, however, attendance issues would not in our judgment warrant dismissal. Termination thus rests chiefly upon the charge of falsifying an injury. Notwithstanding the suspicious circumstantial evidence, in our view that evidence is inconclusive. The record speaks to a situation in which the Claimant allowed himself to become emotionally distraught as he brooded over the pamphlet tossing incident, ultimately convincing himself that it was deliberate, that he had been struck a serious blow, and that he had been singled out for that mistreatment. It is, of course, a mark and measure of adulthood to modify the impulses that sometimes surge up, to exercise judgment, to organize behavior and decision-making and to learn and adhere to the rules of everyday life. In becoming emotionally flustered and retiring from his job obligations, Claimant simply failed to meet his employer's reasonable standards.

Not less than thirty (30) days from date this Award is executed by a majority of the Board Members, Claimant will be offered an opportunity to return to service in his former position without back pay or benefits. His period out of service is to be considered as a disciplinary suspension for his role in the matters described above.

## AWARD

The Claim is partially sustained in accordance with the Findings.

*James E. Conway*
James E. Conway
Chairman & Neutral Member

*Charles J. Fraley*                                    *C. E. Woodcock*
Charles J. Fraley                                      C. E. Woodcock
Employee Member                                        Carrier Member

Dated: January, 20, 2006

4

Amtrak/Chambliss4