IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JERRY K. CHAMBLISS ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:05CV02490-CKK |
| ) | |
| NATIONAL RAILROAD PASSENGER ) | |
| CORPORATION, et al. ) | |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

John G. Kruchko
Keith Fischler
D.C. Bar No. 377601
KRUCHKO & FRIES
1750 Tysons Blvd., Suite 560
McLean, Virginia 22102
(703) 734-0554

Counsel for Defendants
National Railroad Passenger
Corporation and Steven Snyder

July 7, 2006

## TABLE OF CONTENTS

Table of Cases and Other Authorities ............................................. iii

STATEMENT OF FACTS ............................................. 2

ARGUMENT ............................................. 5

I.  THE COURT SHOULD DISMISS COUNTS ONE AND TWO OF THE
    COMPLAINT ............................................. 7

    A.  Chambliss Title VII Claims Are Time-Barred ................. 7

    B.  The Undisputed Facts Establish that Chambliss
        Was Disciplined For Legitimate,
        Non-Discriminatory Reasons ........................... 9

        1.  Chambliss Failed to Report His
            Alleged Injury In A Timely Manner ..................... 10

        2.  Chambliss Failed Deal With Management
            Truthfully Regarding His Alleged Injury ............... 12

        3.  Chambliss Violated Amtrak's National
            Systems Attendance Policy ........................... 13

II.  THE COURT SHOULD DISMISS COUNT THREE
     OF THE COMPLAINT ....................................... 15

III. THE COURT SHOULD DISMISS COUNT FOUR
     OF THE COMPLAINT ....................................... 15

    A.  Snyder Did Not Participate in Any Decision Affecting Chambliss'
        Employment ........................................... 15

    B.  Chambliss Is Responsible For His Suspension ............... 16

    C.  Chambliss Received The Contractual Rights To Which He Was
        Entitled ............................................. 16

IV.  THE COURT SHOULD DISMISS COUNT FIVE
     OF THE COMPLAINT....................................... 17

    A.  Chambliss' Intentional Infliction of
        Emotional Distress Claims Are Barred
        by D.C. Statute § 12-301 ............................. 17

i

B.  Chambliss Fails To State A Claim for Intentional Infliction of Emotional Distress ............................................................. 18

CONCLUSION ...................................................................... 20

# TABLE OF CASES AND OTHER AUTHORITES

**CASES:**

\*     *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986)    ........................ 6

     *Bowden v. U.S.,* 106 F.3d 433 (D.C. Cir. 1997)    ........................ 7

\*     *Brown v. Argenbright Security, Inc.* 782 A.2d 752 (D.C. 2001)    .............. 15

     *Brown v. Brody,* 199 F.3d 446 (D.C. Cir. 1999)    ........................ 11

\*     *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986)    ........................ 5,6,7

\*     *Cooke-Seals v. District of Columbia,* 973 F. Supp. 184 (D.D.C. 1997) ............. 9

     *Dickerson v. Sectek, Inc.,* 238 F. Supp.2d 66 (D.D.C. 2002)    ................ 6

\*     *Fox v. Ciaccia,* 424 F. Supp.2d 1 (D.D.C. 2006)    ............................... 7,9,11

     *Homan v. Goyal,* 711 A.2d 812 (D.C. 1998) ....................................... 19

     *Howard University v. Best,* 484 A.2d 958 (D.C. 1984)    ........................ 19

\*     *Hunter v. District of Columbia,* 943 F.2d 69 (D.C. Cir. 1991)    ......... 15,17-18

     *Kerrigan v. Britches of Georgetowne, Inc.,* 705 A.2d 624 (D.C. 1997)    .... 19

     *Lockamy v. Truesdale,* 182 F. Supp.2d 26 (D.D.C. 2001)    ...................... 19

     *Lorance v. AT&T Technologies, Inc.,* 490 U.S. 900 (1989)    ................... 7

\*     *Mitchell v. DCX,* 274 F. Supp.2d 33 (D.D.C. 2003)    ............................ 19

     *Mundy v. Secretary of the Army,* 845 F.2d 1051 (D.C. Cir. 1988)    .......... 9

     *Mungin v. Katten Muchin & Zavis,* 116 F.3d 1549 (D.C. Cir. 1997)    ... 9

     *Reeves v. Sanderson Plumbing Prods,* 530 U.S. 133 (2000)    .......... 6

\*     *Indicates cases chiefly relied upon*

iii

*Rendall-Speranza v. Nassim*, 107 F.3d 913 (D.C. Cir. 1997) .......... 17

*Saunders v. Nemati*, 580 A.2d, 660 (D.C. 1990) ......................... 17

*Sere v. Group Hospitalization, Inc.*, 443 A.2d 33 (D.C. 1982), .......... 18
*cert. denied*, 459 U.S. 912 (1982)

*Shankar v. ACS-GSI*, 2006 U.S. Dist. LEXIS 22390 (D.D.C. 2006) .......... 8

*Shewmaker v. Minchew*, 504 F. Supp. 156, 163 (D.D.C. 1980) *aff'd*, .... 19
666 F.2d 616 (D.C. Cir. 1981).

*Stewart v. District of Columbia*, 2006 U.S. Dist. LEXIS 12991 (D.D.C. 2006) 7-8

* *Thompson v. Jasas Corp.*, 212 F. Supp. 2d 21 (D.D.C. 2002) .......... 17-19

*Washington v. WMATA*, 160 F.3d 750 (D.C. Cir. 1998), ................. 8-9
*cert. denied*, 527 U.S. 1038 (1999)

*Washington v. Thurgood Marshall Academy*, 2006 U.S. Dist. .......... 6-7
LEXIS 40318 (D.D.C. 2006)

*Washington Post Co. v. U.S. Dep't of Health and Human Servs.*, .......... 6
865 F.2d 320 (D.C. Cir. 1989)

*Waterhouse v. District of Columbia*, 298 F.3d 989 (D.C. Cir. 2002) .......... 6

*Williams v. Callaghan*, 938 F. Supp. 46 (D.D.C. 1996) ................. 18,20

*Williams v. Verizon Washington DC, Inc.*, 266 F. Supp.2d 107 (D.D.C 2003) 5,6

*Woodner v. Breeden*, 665 A.2d 929 (D.C. 1995) ......................... 18

*Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385 (1982) ................. 8

## STATUTES AND OTHER AUTHORITY

* 42 U.S.C. § 2000e-5(e) ............................................... 7

* Fed. R. Civ. P. 56 .................................................. 5-7

Restatement (Second) of Torts § 46 (1965) ..................... 18

* *Indicates cases and other authority chiefly relied upon*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JERRY K. CHAMBLISS | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:05CV02490-CKK |
| | ) |
| NATIONAL RAILROAD PASSENGER | ) |
| CORPORATION, et al. | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM IN SUPPORT OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Jerry K. Chambliss files this suit to complain about a chain of events set in motion after a supervisor, in an ill-advised prank, threw a four-ounce pamphlet and hit him in the face. Although he reported that he was not injured, Chambliss took a number of days off after this incident for a sore nose. National Railroad Passenger Corporation ("Amtrak") conducted an investigation and determined that Chambliss had violated three company policies. As a result, Amtrak decided to terminate his employment. After an arbitration hearing, however, Chambliss was reinstated without backpay.

Chambliss ignores his own misconduct and now asserts that he was the victim of discrimination, retaliation and a number of torts. None of these claims, however, has any merit. The undisputed material facts establish that Amtrak imposed discipline for legitimate, non-discriminatory reasons, and that Chambliss was treated fairly by the Company and consistently with the provisions of the applicable collective bargaining agreement.

As set out in full below, no reasonable jury could find for Chambliss on any of the claims set forth in his Complaint. This Court should grant summary judgment to defendants and dismiss Chambliss' claims with prejudice.

## STATEMENT OF FACTS

Plaintiff Jerry K. Chambliss was first employed by defendant Amtrak in 1989. Defendants' Statement of Material Facts Not in Dispute ("Statement") at ¶ 1. In May 2004, Chambliss was supervised for one day each week by defendant Steven Snyder. Statement at ¶ 3.

Chambliss' claims in this case arise as a result of an incident with Snyder after a safety meeting on May 10, 2004. Statement at ¶ 4. According to the plaintiff's account:

> Mr. Snyder threw a piece of paper in my direction, which went over my shoulder. That's what caught my attention. I turned and the look – saw the piece of paper flying, and I said, What you trying to do? Trying to hit me?

> And he said, No, this is trying to hit you. He picked up the book, threw it, smacked me in the face with it, right across the bridge of my nose.

Deposition of Jerry K. Chambliss ("Chambliss Dep.") at 71.

The "book" at issue was a safety pamphlet. Statement at ¶ 4. It was a pamphlet of "miniscule weight," not more than four ounces. Statement at ¶ 7. Chambliss admits that it was not thrown with sufficient force even to move his glasses. Statement at ¶ 8. He was not hurt and, although he told people about the incident with Snyder, he did not tell anyone that he had suffered any injury. Statement at ¶ 9; *see* Chambliss Dep. at 86-87. *See also* Exhibit E to Statement (Amtrak police report; "no injuries reported").

> Q.     It says, No injuries reported. Do you recall telling anyone that you were hurt or that you were injured at that point?

- 2 -

A.    At that point in time, no.

Chambliss Dep. at 95.  In fact, he continued working and worked a complete shift.
Statement at ¶ 10.

It was only the next day that Chambliss "realized" that he was injured.  Statement
at ¶ 11; *see* Chambliss Dep. at 97 ("[t]he next morning, when I woke up, went to wash
my face – I had an appointment with the counselor – I went to wash my face, my nose
was sore.  I then went to the doctor to make sure nothing was broken or anything.  Still
having headaches.").

As a result of this alleged sore nose, Chambliss missed work from May 11
through May 17, 2004.  Statement at ¶ 12.

Amtrak's Standards of Excellence require employees to notify supervisors
immediately of any workplace injury.  Statement at ¶ 20; *see* Exhibit J (Exhibit II,
Standards of Excellence at 2).  In clear violation of this policy, Chambliss failed to notify
any company official of his claimed injury until he returned from leave on May 17, 2004.
Statement at ¶ 13.  Chambliss knew of this policy and had complied with it previously
during his employment, as he had filed numerous other injury claims.  Statement at ¶ 15;
*see* Exhibit C to Statement at 2 ("you have sustained injuries in the past and you were
aware of the procedures to report injuries").  Further, he failed to file a formal accident
report until June 14, 2004.  Statement at ¶ 14.

Amtrak was concerned about Chambliss' behavior.  The Company conducted a
complete investigation and determined that Chambliss had committed three significant
violations of Amtrak policy:  (1) excessive absenteeism; (2) failure to report injuries and
illnesses promptly; and (3) failure to tell the truth.  Exhibit C to Statement.

This investigation included a full evidentiary hearing with testimony from relevant witnesses. Exhibit C to Statement. In support of the first violation, the investigation established that Chambliss had six occurrences of absence or tardiness in a ninety-day period in violation of Amtrak's National Systems Attendance Policy. Statement at ¶ 18; *see* Exhibit C to Statement. In support of the second and third violations, the investigation established that Chambliss had had numerous opportunities to notify management that he had suffered an injury during the May 10, 2004 incident, but that he failed to timely report the injury and that the information he did provide was untruthful. Statement at ¶¶ 19, 21; *see* Exhibit C to Statement. As a result, Amtrak decided to terminate Chambliss' employment on August 12, 2004. Statement at ¶ 22.

Chambliss grieved this decision. Following the procedures set forth in the collective bargaining agreement covering his employment, the parties convened an arbitration hearing before a panel of three arbitrators. Statement at ¶ 23. On January 20, 2006, the Arbitration Board issued an order reinstating Chambliss without backpay. Statement at ¶¶ 24-25. Amtrak complied with this Award and reinstated Chambliss. Statement at ¶ 26.[1]

In June 2004, Chambliss filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), complaining about the period of unpaid time between his termination and his reinstatement. Statement at ¶ 27. Chambliss delivered his Charge to the EEOC's Baltimore office and asked that EEOC transmit it to the Washington, D.C. office. Statement at ¶ 27. Chambliss was uncertain of the exact date when the Charge was actually filed. Statement at ¶ 29. He explained

---

[1]    Chambliss testified that he returned to work in November 2005, before the Arbitration Board issued its written decision. Chambliss Dep. at 196-99.

that he signed it on June 15, but the EEOC date-stamped it as received June 22, 2004.

Exhibit K to Statement. He also did not know when it was filed in Washington, D.C. or

whether it was filed with the D.C. Office of Human Rights. Statement at ¶¶ 30-31.

The EEOC investigated Chambliss' charge, dismissed it and issued a Notice of

Right to Sue letter, dated September 30, 2005. Statement at ¶ 32.

On December 30, 2005, Chambliss filed the instant complaint in the United States

District Court for the District of Columbia. Statement at ¶ 33. The complaint named

Amtrak and Stephen Snyder as defendants and stated five counts: (1) race discrimination

under Title VII of the Civil Rights Act and section 1981 (against both defendants), (2)

retaliation under Title VII of the Civil Rights Act and section 1981 (against Amtrak

only), (3) assault and battery (against Snyder only), (4) intentional interference with

economic relationship (against Snyder only); and (5) intentional infliction of emotional

distress (against Snyder only). Statement at ¶ 33.

## ARGUMENT

Summary judgment is not a "disfavored procedural shortcut" but can be an

appropriate way to resolve litigation and avoid the time and expense of trial. *Williams v.*

*Verizon Washington DC, Inc.*, 266 F. Supp.2d 107, 115 (D.D.C 2003) (*citing Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 327 (1986)). Summary judgment is appropriate when the

pleadings, depositions, answers to interrogatories, admissions on file and affidavits

establish that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56;

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986); *Williams v. Verizon*

*Washington DC, Inc.*, 266 F. Supp.2d at 115.

In considering a motion for summary judgment, the court must credit the evidence submitted by the nonmoving party and draw all justifiable inferences in its favor." *Reeves v. Sanderson Plumbing Prods,* 530 U.S. 133, 150 (2000); *Washington Post Co. v. U.S. Dep't of Health and Human Servs.*, 865 F.2d 320, 325 (D.C. Cir. 1989). Nonetheless, a moving party is entitled to judgment if "a party fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which the party will bear the burden of proof at trial." *Dickerson v. Sectek, Inc.*, 238 F. Supp.2d 66, 72 (D.D.C. 2002) (*citing Waterhouse v. District of Columbia*, 298 F.3d 989, 992 (D.C. Cir. 2002 (*quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

The nonmoving party's opposition must consist of more than mere unsupported allegations or denials, and must be supported by affidavits or other competent evidence. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; see *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986) ("mere existence of a scintilla of evidence in support of the plaintiff's potion will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff"); *Dickerson v. Sectek, Inc.*, 238 F. Supp. 2d at 72-73 (nonmoving party must submit competent evidence "setting forth specific facts showing that there is a genuine issue for trial").

> "Although a court should draw all inferences from the supporting records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. To be material, the factual assertion must be capable of affecting the substantive outcome of the litigation; to be genuine, the issue must be supported by sufficient admissible evidence that a reasonable trier-of-fact could find for the non moving party"

*Washington v. Thurgood Marshall Academy,* 2006 U.S. Dist. LEXIS 40318, * 18 (D.D.C. 2006) (citations omitted). Under Rule 56(c), if the nonmoving party has failed to make a

sufficient showing on an essential element of his case on which he bears the burden of proof, summary judgment is warranted. *Fox v. Ciaccia,* 424 F. Supp.2d 1, 5 (D.D.C. 2006) (*quoting Celotex,* 477 U.S. at 323).

I.     THE COURT SHOULD DISMISS COUNTS
       ONE AND TWO OF THE COMPLAINT

Counts I and II of the Complaint allege race discrimination and retaliation under Title VII of the Civil Rights Act and section 1981. These claims are ripe for dismissal for two reasons. Plaintiff's Title VII claims are time-barred because Chambliss failed to file a timely charge with the EEOC. The section 1981 claims should be dismissed because, as a matter of law, Chambliss cannot show either race discrimination or retaliation. Instead, the undisputed facts establish that Amtrak disciplined Chambliss for legitimate, business-related, non-discriminatory reasons.

A.     Chambliss Title VII Claims Are Time-Barred

Title VII requires plaintiffs to exhaust administrative remedies by filing a timely charge with the EEOC. *Bowden v. U.S.,* 106 F.3d 433, 437 (D.C. Cir. 1997). The plaintiff must file a charge with the EEOC within three hundred days of the allegedly unlawful action. 42 U.S.C. § 2000e-5(e); *see Lorance v. AT&T Technologies, Inc.,* 490 U.S. 900, 904 n.2 (1989) ("[u]nder 42 U.S.C. § 2000e-5(e), a charge must be filed with the EEOC within 180 days of the alleged unfair employment practice unless the complainant has first instituted proceedings with a state or local agency, in which case the period is extended to a maximum of 300 days"); *Stewart v. District of Columbia,* 2006 U.S. Dist. LEXIS 12991, * 10 (D.D.C. 2006) ("[p]ursuant to the procedures set forth in 42 U.S.C. § 2000e-5(e), an administrative complaint or 'charge,' must be filed with the EEOC within 180 days of the alleged unfair employment practice, unless the

complainant has first instituted proceedings with a state or local agency, in which case the limitations period is extended to a maximum of 300 days").[2]

Chambliss was terminated on August 12, 2004. Statement at ¶ 22.[3] His charge was filed no earlier than June 15, 2005, or more than 300 days later. Statement at ¶ 29; *see* Exhibit K to Statement. Because the charge was filed more than 300 days after his termination, it was late even under the most favorable version of the facts and should be dismissed. *Shankar v. ACS-GSI*, 2006 U.S. Dist. LEXIS 22390, * 7 (D.D.C. 2006) ("the charge was not filed within 300 days of the alleged unlawful employment practice and thus was not timely filed;" "[b]ecause [plaintiff] failed to timely file an EEOC claim, his discrimination claim must be dismissed"); *Stewart v. District of Columbia*, 2006 U.S. Dist. LEXIS 12991, * 19 (D.D.C. 2006) ((dismissing plaintiff's ADA claims because her EEOC charge was submitted outside the applicable 300-days statute of limitations).

Although this limitations period is not jurisdictional, *see Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393 (1982), there is no basis here for equitable tolling. Amtrak took no action at any time to interfere with or affect Chambliss' ability to timely exhaust. *See Washington v. WMATA,* 160 F.3d 750, 752-53 (D.C. Cir. 1998) (granting summary judgment where plaintiff failed to file a timely charge or provide any evidence of affirmative misconduct on the part of the defendant), *cert. denied,* 527 U.S. 1038 (1999); *Fox v. Giaccia,* 424 F. Supp.2d 1, 6 (D.D.C. 2006) (the court's equitable power

---

[2]    Chambliss could not state with certainty that he filed a Charge with the DC Office of Human Rights. Statement at ¶ 31. For purposes of this motion, however, defendants will assume that the 300 day period applies.

[3]    The Charge erroneously states the termination occurred on August 13, 2004. Exhibit K to Statement. Chambliss corrected this error in his complaint. *See* Complaint at ¶ 8. Further, Amtrak's documents make clear that the termination took effect on August 12. *See* Exhibit C to Statement. Even if the later date is accepted for purposes of this Motion, however, the Charge is still untimely.

to toll a statute of limitations will be exercised only in extraordinary and carefully circumscribed instances") (*quoting Mundy v. Secretary of the Army*, 845 F.2d 1051, 1057 (D.C. Cir. 1988).[4]

      B.    The Undisputed Facts Establish that Chambliss Was Disciplined For Legitimate, Non-Discriminatory Reasons

Chambliss' remaining claims of discrimination and retaliation under section 1981 fail to state a viable claim. Even viewed in the light most favorable to plaintiff's case, the undisputed facts establish that Chambliss cannot prevail on these claims[5].

The proper analysis for plaintiff's discrimination and retaliation claims is well-established:

> The allocations of burdens in a section 1981 case is governed by the burden-shifting analysis created by *McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Patterson v. McLean Credit Union*, 491 U.S. 164, 186 (1989), *superseded in part by* The Civil Rights Act of 1991. Accordingly, the plaintiffs bear the burden of proving a prima facie case of discrimination. If the plaintiffs prove such a case, the burden shifts to the defendant to state a legitimate, non-discriminatory reason for the [allegedly discriminatory action]. Should the defendant state such a reason, the plaintiff must be given the 'opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *Texas Dep't of Cmty, Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981).

*Mitchell v. DCX*, 274 F. Supp.2d 33, 45 (D.D.C. 2003).

---

[4]    Chambliss' claims against defendant Snyder should be dismissed for a second reason. Under Title VII, an employer is defined as "a person engaged in an industry affecting commerce who has 15 or more employees . . . and any agent of such person." However, the words "any agent" merely refer to the fact that Title VII embraces respondeat superior liability. Title VII does not allow for suits against individuals in their individual capacity. *Cooke-Seals v. District of Columbia*, 973 F. Supp. 184, 186-87 (D.D.C. 1997).

[5]    To the extent any of Chambliss' claims under Title VII survive the arguments stated in Section I.A. above, they also fail under this analysis. *Mungin v. Katten Muchin & Zavis*, 116 F.3d 1549, 1553 (D.C. Cir. 1997) (same burdens of proof applicable for claims under section 1981 and Title VII).

Chambliss' claims fail, even if it is assumed for purposes of this Motion that he can state a prima facie case of both discrimination and retaliation. Amtrak had a legitimate, non-discriminatory basis for disciplining Chambliss, which is supported by undisputed facts and cannot be rebutted. In fact, Amtrak advances three independent reasons to justify Chambliss' suspension.[6] Amtrak acted properly in response to (1) Chambliss' failure to report his alleged injury suffered on May 10, 2004; (2) Chambliss' dishonesty in dealing with management regarding this alleged injury; and (3) Chambliss' violation of Amtrak's National Systems Attendance Policy.

    1.    **Chambliss Failed to Report His Alleged Injury In A Timely Manner**

The undisputed facts establish that Chambliss failed to report his alleged injury, suffered on May 10, 2004, in a timely manner. This proven misconduct establishes a legitimate, business related reason to suspend Chambliss.

Amtrak's Standards of Excellence require employees to report injuries immediately.

> To comply with legal obligations, Amtrak must be informed of injuries to all people that occur on Amtrak property. Although supervisors are responsible for the actual "reporting" to Central Reporting, you must immediately report to someone in authority any job-related injuries or injuries that occur on Amtrak property to ensure that necessary medical attention is provided.

Statement at ¶ 20, *see* Exhibit J (Exhibit II, Standards of Excellence at 2).

Chambliss violated this policy. He admitted in his deposition that he failed to notify his supervisor or any management official that he was injured until he returned

---

[6]    Chambliss was reinstated without backpay by the Arbitration Board. Statement at ¶ 24. As a result, he was out of work for approximately a year and three months according to his testimony. Chambliss Dep. at 196-99 (returned to work in November 2005). Therefore, the discipline at issue is properly characterized as a suspension.

from his injury leave on May 17, 2004.  Chambliss Dep. at 138-41; *see* Statement at ¶ 13.

He further admitted that he failed to file an Employee Personal Statement regarding this

injury or an Employee Injury/Illness Report until June 14, 2004.  Statement at ¶ 14; *see*

Exhibits H and I to Statement.

It is also undisputed that Chambliss was fully aware of this requirement.

Chambliss knew the proper procedures, but simply choose not to comply with them.

Statement at ¶ 15.  As the Arbitration Board held, "it is difficult to understand how

Claimant could have incurred a disabling injury under the circumstances, or if so, in view

of his past history with injury claims – 6 injuries in 2004—how he could have been

unfamiliar with proper reporting requirements."  Exhibit G to Statement at 3.  Moreover,

this delay had a significant consequence.  Exhibit G to Statement at 3 ("[b]y his actions

he deprived Amtrak [ ] of its right to send him to a Company doctor to determine whether

he had been injured and, if so, how seriously").

Finally, it is also beyond dispute that Amtrak takes these safety requirements very

seriously.  Employees who fail to comply with these reporting requirements are subject to

discipline, up to and including dismissal, depending on the employee's prior record.

Chambliss cannot show that any similarly situated employee was treated with leniency.[7]

This breach of Amtrak's stated policy establishes the Company's first legitimate,

non-discriminatory reason for suspending Chambliss.  Given the undisputed facts

---

[7]    Chambliss cannot simply rely on his own subjective opinions to establish pretext.
As a matter of law, such subjective evidence is insufficient to avoid summary judgment.
*Fox v. Giaccia*, 424 F. Supp.2d 1, 8 (D.D.C. 2006) ("[t]o defeat this summary judgment
motion, the plaintiff must offer something "beyond her own speculations and
allegations.") (*quoting Brown v. Brody*, 199 F.3d 446, 458 (D.C. Cir. 1999)).

underlying this misconduct, the Court should properly dismiss Chambliss' race

discrimination and retaliation claims.

> 2. Chambliss Failed To Deal With Management
> Truthfully Regarding His Alleged Injury

Amtrak had a second, independent, legitimate basis to discipline Chambliss.

Simply put, he failed to tell the truth in dealing with management regarding his alleged

injuries. This misconduct violated Amtrak's Standard of Excellence. The relevant

provisions of this policy, regarding "Truth and Honesty" and "Integrity" provide that

"We will always tell the truth." Statement at ¶ 21; Exhibit J to Statement (Exhibit II,

Standards of Excellence at 3, 6).

Chambliss cannot dispute that he failed to provide truthful and accurate

information to management regarding his alleged injuries. The relevant documents

readily establish his mendacity. For example, Chambliss' own statement, dated June 10,

2004 at 12:45 p.m. fails to report any injury. Exhibit F to Statement at 1. He specifically

states that co-workers asked him if he "was okay," but never indicates that he told anyone

he was injured. Exhibit F to Statement at 1. General Foreman C.M. Bello investigated

the incident talked to Chambliss. According to Bello's statement "[d]uring our meeting

*Mr. Chambliss never made mention of any injury he received from the incident and did*

*not appear to be injured in any way*"). Exhibit D to Statement. (emphasis added).

Chambliss had another opportunity to report any alleged injuries when he

reported the May 10th incident to the Amtrak police. This report, however, clearly notes

"no injures reported." Exhibit E to Statement at 3.

Chambliss seeks to excuse this significant "omission" by claiming he did not

know he was injured until the next day. Chambliss Dep. at 97. Even if this claim were

accepted, it could not excuse plaintiff's dishonesty. Chambliss knew that he had repeatedly reported that he was not injured. If the relevant circumstance changed, he had an obligation to provide updated, corrected information to Amtrak management, particularly because he wished to take time off from work in response to the "new circumstances." In contrast, Chambliss failed to correct the misinformation he had provided his supervisors until after he completed his leave of absence. Statement at ¶ 13.

Chambliss violated the Company's stated policy requiring employees to deal honestly with management. Again, the Company consistently disciplines significant dishonesty by employees. Exhibit J to Statement (Exhibit II, Standards of Excellence at 6) ("*Because honesty is so important to trust and our ability to work together as a team, Amtrak has no tolerance for employees who are dishonest*") (emphasis in original). Chambliss cannot show that he was subjected to disparate treatment or identify any similarly situated employees who were subject to lesser discipline.

This breach of stated Company policy provides a second non-discriminatory, business-related reason for Amtrak's decision. For this reason as well, summary judgment on counts one and two is appropriate.

          3.      Chambliss Violated Amtrak's National Systems Attendance Policy

Finally, it is also undisputed that Chambliss violated Amtrak's National Systems Attendance Policy. Exhibit J to Statement (Exhibit I, National Systems Attendance Policy at 2) (an employee may be regarding as having an instance of excessive absence/tardiness after the fifth occurrence of absence or tardiness in any 90-day period). He had six occurrences of absence or tardiness in a ninety-day period.

| | | |
|---|---|---|
| 1. | May 3, 2004 | Sick |
| 2. | May 11-13, 2004 | Sick (not reported as an injury) |

| 3. | May 16, 2004 | Sick |
|----|--------------|------|
| 4. | June 13, 2004 | 22 minutes late |
| 5. | June 16, 2004 | 1 hour, 18 minutes late |
| 6. | June 17-20, 2004 | Unexcused absence |

Statement at ¶ 18; *see* Exhibit B (Exhibit 3 to Chambliss Dep.) (denying leave for June 17 and June 20, 2004).

The National Systems Attendance Policy provides, in relevant part, that employee with excessive absences will be dealt with in accordance with Amtrak's relevant counseling and disciplinary guidelines and with the employee's prior record. Exhibit J to Statement (Exhibit I, National Systems Attendance Policy) at 4. Amtrak simply complied with this stated policy. Chambliss can submit no evidence, and in fact no evidence exists, to show that the policy was applied in an inconsistent manner. Chambliss' excessive absences and tardies in a ninety day period warranted discipline.

Chambliss' violation of National Systems Attendance Policy provides a third, objective basis for Amtrak's decision to discipline Chambliss. The Company has legitimate, business related reasons for requiring employees to maintain a reasonable standard of attendance and for imposing discipline, up to termination, for employee who are unable to comply with this standard.

For this reason as well, the discipline imposed for Chambliss was legitimate, consistent with Company policy, and non-discriminatory. There is no evidence whatsoever of race discrimination or retaliation, and the Court should dismiss counts One and Two of the Complaint.

II.    THE COURT SHOULD DISMISS COUNT THREE OF THE COMPLAINT

The allegations stated in count three of the complaint, assault and battery, were filed too late. These claims are precluded by the relevant statute of limitations and should be dismissed.

D.C. law provides a one-year statute of limitations for actions for assault and battery. D.C. Statutes § 12-301 (4). *Brown v. Argenbright Security, Inc.* 782 A.2d 752, 757 n.4 (D.C. 2001).

According to his Complaint, Chambliss was physically assaulted by Snyder on May 10, 2004. Statement at ¶ 4; *see* Complaint at ¶ 25 ("[o]n May 10, 2004, Stephen [sic] Snyder, a white supervisor, physically assaulted and battered the plaintiff by hitting him in the face with a book"). Chambliss filed his complaint on December 30, 2005, more than eighteen months later. Statement at ¶ 33.

As the Complaint was filed more than one year after the alleged incident, his claim is time-barred and should be dismissed. *Hunter v. District of Columbia*, 943 F.2d 69, 72 (D.C. Cir. 1991) (claim for assault and battery is barred by the one-year statute of limitations).

III.    THE COURT SHOULD DISMISS COUNT FOUR OF THE COMPLAINT

In Count Four of the Complaint, Chambliss alleges that defendant Snyder intentionally interfered with his economic and contractual relationships with Amtrak. This claim fails to state a cause of action for three separate reasons.

A.    Snyder Did Not Participate in Any
Decision Affecting Chambliss' Employment

This claim is stated against defendant Snyder. Yet, there is no evidence that Snyder had any role in a decision affecting Chambliss' employment, and in fact, no such

- 15 -

evidence exists. This decision was made by other, more senior employees and Snyder had no role in this decision. Statement at ¶ 22.

B.    Chambliss Is Responsible For His Suspension

Chambliss seeks to explain this fatal defect away by claiming that Snyder set the forces in motion leading to his termination. Chambliss Dep. at 191 ("his actions precipitated the events of Amtrak filing charges against me"). Even if this "theory" were accepted, it would lead directly to the second defect in this count. There were intervening events, solely in Chambliss' control, that led directly to Chambliss' suspension. Snyder was not responsible for Chambliss' poor decisions.

The undisputed facts establish that Chambliss was disciplined for failing to report an injury, for dishonesty, and for excessive attendance problems. Statement at ¶¶ 16-22. Neither Snyder nor any other Amtrak employee caused Chambliss to delay reporting his injury, to deal with his managers in a dishonest fashion, or to accumulate excessive absences and tardies. Chambliss was disciplined only because he alone made bad decisions. Snyder's conduct did not cause the suspension at issue in this case.

C.    Chambliss Received The Contractual Rights To Which He Was Entitled

Finally, even if Chambliss were able successfully to shift the blame to Snyder, Chambliss received all the contractual rights he could possibly claim. In his deposition, Chambliss was able to identify only one contract that related to his employment -- the collective bargaining agreement between Amtrak and the Sheet Metal Workers International Association. Chambliss Dep. at 191-92.

It is beyond dispute that Chambliss received all the rights he was entitled to under this contract. His termination was grieved and, ultimately, after an impartial arbitration,

he was awarded reinstatement without backpay. Statement at ¶¶ 23-24. No action taken Snyder affected Chambliss' ability to exercise or benefit from his rights under this collective bargaining agreement.

For these reasons, count four fails to state a cause of action. The Court should dismiss Chambliss' intentional interference with economic relationship claims.

IV.    THE COURT SHOULD DISMISS COUNT FIVE OF THE COMPLAINT

Plaintiff's allegations of intentional infliction of emotional distress, stated solely against defendant Snyder, fail for two reasons. These claims are time barred and they fail to state a claim under relevant DC law. For each of these reasons, count five should be dismissed.

A.    Chambliss' Intentional Infliction of Emotional Distress
Claims Are Barred by D.C. Statute § 12-301

Plaintiff's intentional infliction of emotional distress claims are time-barred. Although there is no specific statute governing this tort, D.C. courts have consistently held that

> a claim for emotional distress that is "intertwined with any of the causes of action for which a period of limitation is specifically provided," including assault and battery, is subject to the limitations period for the intertwined claim.

*Rendall-Speranza v. Nassim,* 107 F.3d 913, 920 (D.C. Cir. 1997) (*quoting Saunders v. Nemati,* 580 A.2d, 660, 664-65 (D.C. 1990); *see also Thompson v. Jasas Corp.,* 212 F. Supp. 2d 21, 27 (D.D.C. 2002) ("[t]o the extent that plaintiff's emotional distress claim is based on conduct occurring in connection with her employment by Jasas, it is 'intertwined with' her hostile work environment claim and thus it assumes the hostile work environment claim's one year limitations period); *Hunter v. District of Columbia,*

943 F.2d 69, 72 (D.C. Cir. 1991) (where emotional distress claim is not independent of alleged assault and batter, it is barred by the one-year statute of limitations).

Chambliss' emotional distress claim is intertwined with his assault and battery claim. All of plaintiff's claims arise from the incident in which Snyder hit Chambliss with the four ounce safety pamphlet. Complaint at ¶ 23 (Defendant Steven S. Snyder attacked the plaintiff because of his race").

The alleged assault occurred in May 2004 and Chambliss failed to file his Complaint until December 2005, more than eighteen months later. For this reason, the allegations of intentional emotional infliction of emotional distress are barred by the one-year statute of limitations stated in D.C. Statue § 12-301 and should be dismissed.

**B.    Chambliss Fails To State A Claim for
        Intentional Infliction of Emotional Distress**

Chambliss' emotional distress claims are subject to dismissal for a second reason. To prevail on a claim for intentional infliction of emotional distress, a plaintiff must meet an extremely high standard. Under District of Columbia law, a plaintiff must prove that the defendant engaged in (1) extreme and outrageous conduct that (2) intentionally or recklessly caused (3) severe emotional distress to another. *Williams v. Callaghan*, 938 F. Supp. 46, 51 (D.D.C. 1996) (*citing Woodner v. Breeden*, 665 A.2d 929, 934-35 (D.C. 1995)). Further, a court will find extreme and outrageous conduct "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Williams*, 938 F. Supp. at 51 (*quoting Sere v. Group Hospitalization, Inc.*, 443 A.2d 33, 37 (D.C. 1982), *cert. denied*, 459 U.S. 912 (1982), and *quoting* Restatement (Second) of Torts § 46 (1965)); *see Thompson v. Jasas Corp.*,

212 F. Supp.2d 21, 27-28 (D.D. C. 2002) ("[l]iability will be imposed only for conduct so outrageous in character, and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community") (*quoting Homan v. Goyal,* 711 A.2d 812, 818 (D.C. 1998)).

Chambliss cannot meet this standard.  The D.C. Court of Appeals has stated that "employer-employee conflicts do not, as a matter of law, rise to the level of outrageous conduct." *Howard University v. Best*, 484 A.2d 958, 986 (D.C. 1984); *see Thompson v. Jasas Corp.*, 212 F. Supp.2d at 28 ("[i]n an employment context, the proof required to support a claim for intentional infliction of emotional distress is particularly demanding") (*citing Lockamy v. Truesdale,* 182 F. Supp.2d 26, 38 (D.D.C. 2001)).

In *Thompson v. Jasas Corp,* the court recited the facts in *Kerrigan v. Britches of Georgetowne, Inc.,* 705 A.2d 624 (D.C. 1997) as an example of extreme behavior that fell short of the required legal standard for the tort of emotional distress.  In *Kerigan,*

> the plaintiff claimed that his employer had 'targeted him for a sexual harassment investigation, manufactured evidence against him in order to establish a false claim of sexual harassment, leaked information from the investigation to other employees, and unjustifiably demoted him to he position of sore manager in order to promote a woman to his position. The court held *that the described conduct was "of the type attributable to 'employer-employee conflicts [that] do not as a matter of law, rise to the level of outrageous conduct.*

212 F. Supp.2d at 28 (*citing Kerrigan,* 705 A.2d at 628) (*quoting Howard University v. Best,*  484 A.2d 958, 986 (D.C. 1984) (emphasis added)); *see also Shewmaker v. Minchew*, 504 F. Supp. 156, 163 (D.D.C. 1980) ("harassment in a professional context, including exclusion from business meetings and the spreading of unfavorable rumors, is not the type of conduct" that gives rise to a claim of intentional infliction of emotional distress), *aff'd,* 666 F.2d 616 (D.C. Cir. 1981).

- 19 -

Chambliss complains because, as a misguided joke, Snyder tossed a four-ounce pamphlet at him. He does not allege facts that even approach the showing necessary to establish intentional infliction of emotional distress. As a matter of law, his allegations fail to state a viable claim.[8]

## CONCLUSION

As a matter of law, defendants Amtrak and Snyder are entitled to judgment on all the claims Chambliss has raised this action. Chambliss has failed to comply with the relevant statute of limitations and, as a result, his Title VII, intentional infliction of emotional distress and assault and battery claims should be dismissed. His claims under section 1981 fail because Amtrak has three independent, non-discriminatory reasons for disciplining Chambliss, each of which was legitimate and supported by undisputed facts.

Chambliss' claims that Snyder interfered with his economic and contractual relationships with Amtrak also fail because Snyder did nothing to affect his employment and because Chambliss received all rights he was entitled to under the only contract he could identify, his collective bargaining agreement. Finally, Chambliss' intentional infliction of emotional distress claim fails for a second reason because, as a matter of law, his claims cannot meet the high standard of proof established for this tort.

For these reasons, the Court should grant defendants' motion for summary judgment and dismiss Chambliss' complaint with prejudice.

---

[8]    Chambliss' emotional distress claims also fail because he cannot demonstrate that he suffered any injury. He cannot show any emotional harm because he has failed to designate an expert witness on this point in the required 26(b)(4) statement. Plaintiff failed to file this statement by the Court ordered deadline of April 28, 2006. Minute Order, dated February 27, 2006. Without expert testimony, he cannot make the evidentiary showing necessary to establish this tort. *See Williams v. Callaghan*, 938 F. Supp. at 51.

Dated: July 7, 2006

Respectfully submitted,

KRUCHKO & FRIES

By: _John G. Kruchko/kf_

John G. Kruchko

_Keith Fischler_

Keith Fischler
D.C. Bar No. 377601

Counsel for Defendants
National Railroad Passenger
Corporation and Steven Snyder

:

OF COUNSEL:

KRUCHKO & FRIES
1750 Tysons Blvd., Suite 560
McLean, Virginia 22102
(703) 734-0554

- 21 -