IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

Jerry K. Chambliss

Plaintiff

v.                                             Case number 1:05 CV 02490

National Railroad Passenger Corporation,

 trading as Amtrak, et al.

Defendants

**Plaintiff's Answer And Memorandum In Opposition to Defendants Motion for Summary Judgment**

Plaintiff, Jerry K. Chambliss, by the undersigned attorney files this answer and memorandum in opposition to defendants' motion for summary judgment.

### INTRODUCTION

Plaintiff's Complaint contains five Counts.

Two of the counts have been brought under Title VII of the 1964 Civil Rights Act, and, the 1866 Civil Rights Act, Counts one and two. Count one alleges disparate treatment and a disciplinary action taken against the plaintiff because of his race in that it engaged in disparate treatment by terminating him while the white defendant, Steven Snyder was not terminated.

Count two alleges that the plaintiff was retaliated against by the dependent National Railroad Passenger Corporation/Amtrak Because He Spoke up for His Civil Rights in Violation of Title VII of the 1964 Civil Rights Act, 42 USC 2000e et seq. and the 1866 Civil Rights Act, 42 USC 1981. Steven Snyder is not sued in this Count.

1

Count three alleges assault and battery, and it sues only that the indent Steven Snyder. This Count has brought as a result of Steven Snyder strike in the plaintiff in the face on May 10, 2004 with a safety manual.

Count four alleges that Steven Snyder intentionally interfered with the plaintiff's economic relationship with his employer, national Railroad passenger Corporation/Amtrak.

Count Five alleges that Steven S. Snyder intentionally Inflicted Emotional Distress upon him.

Defendants National Railroad Passenger Corporation and Steven S. Snyder have moved this court for summary judgment on   all counts of plaintiff's complaint.

Plaintiff also brought this lawsuit pursuant to the 1866 Civil Rights Act, 42 USC section 1981 and Title VII of the 1964 Civil Rights Act, 42 USC 2000e et seq.

There is no requirement of exhaustion of administrative remedies for suits under the 1866 Civil Rights Act.

Count one alleging that the defendants Steven S. Snyder and National Railroad Passenger Corporation discriminated against him based upon his race.

Steven S. Snyder is a white male and a foreman in the employment of the National Railroad Passenger Corporation. On May 10, 2004, Steven S. Snyder physically assaulted the plaintiff by throwing a safety booklet at him and striking him in the face. On that date, the plaintiff reported the incident to the management of the defendants National Railroad Passenger Corporation

Plaintiff suffered injury to his face, and, he filed a claim under the Federal Employees Labor Act.  As a result of this incident, plaintiff was required to miss time from work.  He filed a claim under the   FELA, which was settled for $13,000.

The defendant National Railroad Passenger Corporation terminated the plaintiff on August 13, 2004 because he allegedly made a false claim of injury, absenteeism and failure to report the injury in a timely manner.

Plaintiff filed a grievance with his union, and as a result, the plaintiff was reinstated to his employment without back pay. The arbitrator also ruled that Plaintiff's absenteeism

While plaintiff was terminated from his employment, the defendant Steven Snyder was given a two-day suspension that he was not required to serve. Defendant National Railroad Passenger Corporation was well aware that Steven Snyder had engaged in prior racist activities against minority employees.  He had called African-Americans jungle bunnies, ni….s, and bitches, kicked a subordinate and engaged in racially discriminatory acts against minority employees including the plaintiff.

As a result of his termination and disparate treatment by the defendant national railroad passenger Corporation the plaintiff filed a charge of discrimination with the EEOC.

In Count One, plaintiff alleges that Steven S. Snyder and the National Railroad Passenger Corporation violated the 1866 Civil Rights Act and Title VII of

3

the 1964 Civil Rights Act when he was attacked and terminated while Steven Snyder was not terminated.

## SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate only if "`there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.'" *Anderson v. Liberty Lobby, Inc., 477 US 242, 247* (1986) (quoting FED. R. CIV. P. 56(c)). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248. We must view the evidence in the light most favorable to the non-moving party, draw all reasonable inferences in its favor, and eschew making credibility determinations or weighing the evidence. *See Lathram v. Snow, 336F.3d 1088* (D.C. Cir. 2003) *Reeves v. Sanderson Plumbing Prods. 530 US 133,* (2000)).

## ARGUMENTS

### THE DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT AS TO COUNT ONE

Plaintiff concedes that he did not timely filed discharge of discrimination with EEOC, and, title VII is thus not applicable. Plaintiff adds however that 42 USC 1981 which provide the same relief is title VII is applicable.

In *McDonnell Douglas Corp. v. Green, 411 US 792 (1973)*, the Supreme Court set out a burden-shifting approach to employment discrimination claims in cases where the plaintiff lacks direct evidence of discrimination. While plaintiff has some direct evidence of discrimination, the argument will proceed under *McDonnell Douglas,* the plaintiff "must carry the initial burden under the statute of establishing a prima facie case of racial discrimination." *Id.* at 802, If the plaintiff

4

meets this burden, "[t]he burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason" for its action. *Id.* If the employer succeeds, then the plaintiff must "be afforded a fair opportunity to show that [the employer's] stated reason . . . was in fact pretext" for unlawful discrimination. *Id.* at 804, The *McDonnell Douglas* framework applies to both Title VII and 42 U.S.C. 1981claims. <u>Carter v. George Washington Univ.,</u> *387F.3d 872, 878*  (D.C. Cir. 2004).  In order to establish a prima facie case, the *McDonnell Douglas* Court explained, may be done by showing (i) that [the plaintiff] belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications. *McDonnell Douglas for 11U.S. 792, at 802,* In setting forth these requirements, however, the Supreme Court emphasized that "[t]he facts necessarily will Page 488 vary in Title VII cases, and the specification above of the prima facie proof required . . . is not necessarily applicable in every respect to differing factual situations." *Id.* n. 13. In a similar vein, the Court has made clear that "[t]he burden of establishing a prima facie case of disparate treatment is not onerous," <u>Tex. Dep't of Cmty. Affairs v. Burdin</u>e*, 450 US 248, 253 (1981)* and that "the precise requirements of a prima facie case can vary depending on the context and were `never intended to be rigid, mechanized, or ritualistic,'" <u>Swierkiewicz v. Sorema N.A., 534 US 506, 512</u> *(2002) (quoting <u>Furnco Constr. Corp. v. Waters</u> 438 US 567 (1978) ,.* Given the Supreme Court's emphasis on flexibility, this court has

5

adopted a more general version of the prima facie case requirement: "the plaintiff must establish that (1) he is a member of a protected class; (2) he suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." Brown v. Brody 199 F. third for 46, 452 (D.C. 1999); Teneyck v. Omni Shoreham Hotel, *365F .3d 1139, 1150* Here, (1) plaintiff is a member of a protected class, African-American (2) plaintiff was attacked by a white foreman defendant Steven Snyder who had a history of using racial epithets and engaging in harassing and threatening conduct towards minority employees; (3) the white employees who attacked the plaintiff despite his prior history of racial harassment, threatening conduct and racial discrimination was not terminated.

Plaintiff submits that this sets for a prima facie case of racial discrimination with regard to his termination  Satisfies  *Brown*'s elements, *see infra* p. 489). Brown, *199 F.3d at 452, 446 see also .* Holbrook v. Reno *196F.3d 261* (D.C. Cir. 1999) (stating burden as requirement to show "that plaintiff and [a] similarly situated person were treated disparately"; Bundy v. Jackson, Ickes *641 F.2d 934, 951*  (D.C. Cir. 1981) ".

*Plaintiff submits that the difference in treatment between he and Steven Snyder clear shows that there was disparate treatment, and, that evidence along with the history exhibited by this foreman, concerning race, threats and harassment, also indicates that the defendants reasons for terminating him was a pretext for discrimination. See, e.g.* Graham v. Long Island R.R. *230,* F.3d 134 (2d Cir. 2000) (explaining that a showing of differential treatment can "serve as

6

evidence that the [defendant's] proffered legitimate, non-discriminatory reason for the adverse . . . action was a pretext for racial discrimination"). <u>Chappelle – Johnson v. Powell,</u> 440F.3d 484 (D.C. 2006)

Defendants' legitimate nondiscriminatory reasons for terminating the plaintiff was because he allegedly reported a false injury, he did not file an injury claim timely, and absenteeism. The documents submitted with this answer shows that the defendant was treated by Dr. Jeffrey D. Gaber, which shows that he was injured. The arbitrator in reinstating the plaintiff found that the absenteeism was not sufficient to cause the plaintiff's termination. This evidence along with the history of Steven Snyder clearly shows that the defendant's reasons for terminating the plaintiff were a pretext.

## THE DEFENDANT RETALIATED AGAINST THE PLAINTIFF BECAUSE HE SOUGHT TO PROTECT HIS CIVIL RIGHTS.

The 1866 Civil Rights Act forbids an employer from discriminating against" an employee or job applicant because that individual "opposed any practice" made unlawful by Title VII or "made a charge, testified, assisted, or participated in" a Title VII proceeding or investigation. § 2000e-3(a).

In order to make out a prima facie case of retaliation, Plaintiff must show: (1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment action; and (3) there is a causal connection between the two. *See* <u>Morgan v. Fed. Home Loan Home Loan Mortgage Corp</u>. *328F.3d 647,* (D.C. Cir. 2003). As detailed below, Plaintiff's evidence makes out a prima facie case for retaliation. That is, he engaged in civil rights activity prior to his termination by

7

writing a letter complaining of discrimination with regard to a February 7, 2003 incident and the fact that he was concerned about his employment with Amtrak. See pages 3-4 of the attachments. Further, the investigation of the attack on him by Steven Snyder reveals that plaintiff was complaining that had Steven Snyder been African-American, he would've been taken off of the job. Further, a June 22, 2004 memo of the defendant, Amtrak acknowledges that the plaintiff was complaining of racial discrimination. They can written memo of the defendants reveals the same, and, a case manager intake form is also evidence that plaintiff was complaining of racial discrimination. See attachments nine -- a team, and 16-17. This evidence shows that plaintiff engaged in civil rights activity, and, adverse employment action, termination, was taken against him. An "adverse employment action" within the meaning of *McDonnell Douglas* is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits. *Burlington Indus., Inc. v. Ellerth,* 524 US 742 (1998).." Brown v. Brody, 199 F.3d 446 ; Domino's Pizza, Inc. v. Donald 126 S. Ct. 1246 (2006. Defendant has thus retaliated against the plaintiff because he spoke up for his civil rights. This is especially true, since one of the defendants foreman who was involved in attacking the plaintiff had a history of racial discrimination, use the racial epithets, and threatening behavior.

Plaintiff did not receive back pay. But His family had to live for several days without income, and, once he found the job, he was paid much less.. Many reasonable employees would find a month without a paycheck to be a serious

8

hardship. (and paycheck) and filing a discrimination complaint might well choose the former. That is to say, an indefinite suspension without pay could well act as a deterrent, even if the suspended employee eventually received back pay. Cf. *Mitchell*, 361 US 292, 361 ("[I]t needs no argument to show that fear of economic retaliation might often operate to cause aggrieved employees to quietly to accept substandard conditions"). Thus, termination of the plaintiff and then reinstatement without back pay was materially adverse employment action. reasonable one. M*itchell at 361.*

*Accordingly, defendant' s motions for summary judgment as to counts one into should be denied.*

Respectfully Submitted,

Norris C. Ramsey

2122 Maryland Ave.

Baltimore, Maryland 212 18

Maryland trial bar number 01453

410-448-19 96