IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

JERRY CHAMBLISS

v.                                              Case No. 105cv02490

National Railroad Passenger Corporation, Et Al.

PLAINTIFF'S STATEMENT OF FACTS NOT IN DISPUTE

Jerry Chambliss, plaintiff, by the undersigned attorney files this statement of facts in support of answer to motion for summary judgment, and says:

1. On or about 6/9/03, Chambliss sent a letter to National Railroad Passenger Corporation's Business Diversity Department Complaining of Discriminatory Harassment concerning the use of Absenteeism Policies. Pages 3-4 of Attachments

2. On January 15, 2005, Chambliss received a letter from the defendant, Amtrak, notifying him that an arbitrator had ruled that he should be returned to work. Attachments, page 7

3. It memo from Amtrak describes the type of disciplinary action that would be taken against plaintiff Chambliss because of the May 10, 2004 incident when he was struck him in the face, and, that the plaintiff would be charged with failure to report an injury, falsifying reporting of an injury, accident proness, and that the plaintiff was represented by an attorney. The statement also contains language that plaintiff, Chambliss was complaining of racial discrimination.

4. A June 22, 2004 memorandum describes the May 4, 2004 incident, where in the plaintiff had complained of difference of treatment because he is African-

1

American, plaintiff's allegations that Snyder had had problems with African-American employees in the past, and he would have been treated differently had he been African-American. Attachments page 9.

5. A handwritten memo from Amtrak, personnel dated 6/14 describes that the plaintiff had gone to Labor Relations. A person by the name of Vern had stated that the incident involving the plaintiff was not workplace violence because defendant Snyder was joking. Attachments, page 10.

6. The 6/14 memo states that Dino had never had a problem with Snyder. At the time of the incident, Snyder was about to get a five-day suspension for blowing the line. He was designated two days off for the incident. Attachments page 10. The 6/14 memos describes that the plaintiff did not report that he was injured, and, Joe Allione, a supervisor, asked if Chambliss had been injured, and he said yes. The decision was then made to charge plaintiff with late reporting of an injury.

7. One of the defendants case managers intake forms of attachments pages 11-15 describes plaintiff's complaint to the defendant that the defendant Amtrak's treatment of the incident was racially motivated. The attachment is dated 6/22/04. Plaintiff further describes that he had filed prior complaints with the defendant, see Attachment page 12, 13, and 15.

8. Attachment, pages 16-17 written by one of the defendant's managerial employees provided a summary of the May 10, 2004 incident including plaintiff's allegation of racial discrimination. See Attachment page 16-17.

9. The 6/9 memos describes that the acts of defendant Snyder was a joke.

Attachments page17.

10.     Plaintiff file charges of discrimination with EEOC dated 6/15/05 alleging race discrimination and retaliation, and he received a notice of right to sue. Attachments pages 20-22

11.     On 6/12/03, an individual from the defendant's diversity Department sent a memo to file claiming that the plaintiff had alleged discrimination.  Attachment page 3.

12.     Attachments, page 24-26 contains a notice of intent to impose discipline because of the injuries he allegedly sustained on the May 10, 2004 incident, and, that he had not previously stated that he was injured.

13.     Attachment 27, a Memo from the General Manager, Jim Reinknecht thanks the plaintiff for the time and effort he put into making the Safety Committee Cookout a success.  Attachment page 27.

14.     The Opinion and Award returning the plaintiff to work made a finding that the absenteeism was not sufficient to terminate the plaintiff while returning him to work without back pay.  Attachment page 28-29

15.     Plaintiff was returned to work on November 20, 2005.  Attachments page 30-31.

16.     Amtrak's Antidiscrimination and its Harassment Policy Prohibits Race/Color/Sex Discrimination/National Origin/Religious Discrimination. Attachment Page32

17. The disciplinary action for violating this policy included language that states that violation the policy was a serious act of misconduct that can result in

disciplinary action up to and including termination. The policy states that harassment because of the person's race, including verbal, physical, visual, intimidations, belittling, denigrating, or an aversion because of race would result in disciplinary action. Attachment page 32.

18. Plaintiff was terminated effective August 13, 2004. Attachments page 33.

19. Plaintiff was treated by Dr. Jeffrey Gaber and Associates for the injuries he sustained as a result of the acts of defendant Snyder. Attachment pages 35-39.

20. Plaintiff filed criminal charges against Steven Snyder as a result of the May 10, 2004 incident. Attachments pages 40-43.

21. Steven Snyder waived his rights to disciplinary hearings on 6/19/04 for striking the plaintiff in the face with the book. He received two days of suspension in accordance with the operational commitments; 1/23/04 where in the disciplinary action was held in abeyance after he injured himself while under the influence of drugs and fell. Attachments 46, 62-94, 6/21/04 wherein he caused malfunction of equipment. Attachment pages 49,

21.     The deposition of Carlos Alvarado, Attachment pages 127-136 reveals the following concerning Steven Snyder and racial discrimination:

22.     a. Mr. Alvarado is an employee of Amtrak, who was hired on 9/9/2000 and, he was under the supervision of Steven Snyder in the year 2003. He was a part of a group of employees who sent a letter in 2002, August 22, 2002 relating to the conduct of Steven Snyder. Attachments page 130. He was aware of complaints that were made with regard to Steven Snyder in the year 2002. Attachments page 131, he had complained of Snyder's conduct towards him. He

4

had alleged that Snyder had exhibited profanity in a threatening manner. That he would rush towards people or act in a physically threatening manner. Attachments pages 131-132. His complaints concerning the acts of defendant Snyder towards the plaintiff to Amtrak was before he struck the plaintiff in the face. Attachments page 132. While Snyder considered himself as playing around when he would try to grab his hard hat, he did not consider it play. Attachment 135. Dennis Smith spoke to Snyder concerning the actions towards Mr. Alvarado. Attachment 135. Snyder tried to kick Alvarado, but Alvarado blocked his kick. Attachment 135-136.

23. The deposition testimony of Dawn Marcella, the Senior Director for Dispute Resolution Attachment138-147, revealed that, on August 22, 2002, Mr. Charlus had complained of Steven Snyder's conduct as threatening and harassing. Attachments pages 141-147.

24. The Deposition Testimony of Harry Charlus, a coach cleaner who was then a ticket agent worked for the defendant since November30 2000 revealed that Steven Snyder had been engaged in workplace violence towards him. He made complaints concerning Steven Snyder towards him on three occasions. Attachment page 151. Steven Snyder followed him out of a meeting in a threatening manner. He approached Mr. Charlus and other individuals in such a threatening manner that they bald their fists thinking that he was going to attack them. He observed Snyder making threatening homosexual comments directed to coworkers, a Mr. Jenkins, who did not take to it kindly. Attachment page 153. He also recalled Mr. Alvarado informing him that Snyder had pushed or brushed

5

against him and kicked him. Attachment153. He spoke to Dennis Smith concerning this incident. The deposition testimony of Doria Washington attachments pages 158- 167 reveals that there was racial discrimination by Steven Snyder prior to the incident. Mr. Chambliss would come in every morning and have his breakfast. Steve Snyder was at the same blowing his nose into a tissue and threw it and missed Mr. Chambliss, and it fell in front of Mr. Chambliss breakfast. After Chambliss asked him if he was trying to hit him, Steven Snyder reacted by throwing a book and striking Mr. Chamblis in the face. Attachments161-162. Mrs. Snyder used language in a threatening manner. He would state after making assignments I don't want to hear any shit from you. He called the employees "niggers and bitches". Attachments 163. She testified that after being approached by one of the managers, and she told the manager that they were having significant difficulties with Steven Snyder. Attachment 165, Dennis Smith was told about all of the acts of Snyder. Attachment 166. Smith explained that he told Snyder that he should not be using those types of words because it's improper. Attachment166. While all the workers were in a van with Steven Snyder, he uses racial epithets towards them and called and bitches. Attachments 166-167.

25.     According to the deposition of Harry Charles, an employee of Amtrak, he wrote a letter in August 2002 to management complaining of a hostile working relationship with Steven Snyder, threats, and threatening use of profanity, Attachment, pages151-152. He made threatening homosexual comments directed to a coworker. Attachments page153. He pushed Carlos Alvarado, and,

6

he kicked him. Attachment page 153. He spoke to Dennis Smith on several occasions. Attachment page153. He also spoke to Chris Bello, and Dennis Smith spoke to Snyder.

26. According to the testimony of Dori W. Washington, an employee of Amtrak, she was present when Mrs. Snyder threw the book at Mr. Chambliss. Attachment page160. Steve Snyder blew his nose in a napkin and threw the napkin at Mr. Chambliss where he was eating his breakfast. Attachment 161-162. Pam Bunch was present at the time also. Attachment page 161. Pam said yuck. and, Mr. Chambliss said now you are going to throw it at me. Attachment page162. Chris Bello called her into the office with others to take a statement. Attachment page 162-163. In August 2002, while she was in the van with coworkers, Snyder said he did not want to hear any shit from them, and, they should stop complaining and called them niggers and bitches. Attachment page 163. She saw Carlos being kicked in the behind by Snyder. Attachments page 164-165.

27. Jeff Weigiels of management spoke to Ms. Washington who said that Amtrak had been having a lot of problems with Steve Snyder. Attachment page 165.

28. Portions of the transcript of the hearing concerning the plaintiff's dismissal revealed certain important information for this case. On June 4, 2004, the defendant began to find issues with the plaintiff's attendance. Attachment page 174. Defendant Amtrak acknowledged that it had received medical report from a physician concerning the plaintiff, and, it revealed that he was injured.

7

Attachments page 179

29. Paula Bunch, an employee of the defendant was present and witnessed the plaintiff being struck by the pamphlet thrown at him. Attachment page 182. She saw Snyder throw the book and hit the plaintiff in the face. Attachment page 183. Mr. Bello did not seem to want to hear the complete story of what happened on that day. Attachment page 183. She testified that the book was thrown like a hardball. Attachment page 183. The safety book hit him with its edge. Attachment 185, 187. When Mr. Bello, of management interviewed Ms. Bunch, he did not want to know who was in the room, and, the entire story. Attachment page 186.

30. Stacy Deffenbaugh, an employee of the defendant testified that she was present when Mr. Chamblis was struck. They gasped. Attachment page 188. Mr. Chambliss said that he was hurt at the time of the incident. Attachment page 189. Mr. Allione (manager) agreed that the plaintiff that told him on the date of the incident that he was hurt. Attachment page 189. Management would not meet with Mr. Chambliss, and, the reason for that failure is unknown. Attachment 189. 195 Management had knowledge that when Chambliss told him about the accident, he told him that he was hurt and he needed medical attention. Attachment page 190,

31. At the time of the incident, Snyder was the plaintiff's Foreman.

32. Prior to and since the incident, defendant knew that Steven Snyder has been disciplined for using the words nigger, jungle bunny, bitches, and the use of profane language towards employees. He had also engaged in threatening

8

conduct, and, kicked a subordinate.

33 Snyder only suffered a suspension for this conduct, and, while he was disciplined for striking Chambliss, his suspension was not served.

34. The defendant National Railroad Passenger Corporation/Amtrak investigated the May 10, 2004 incident, and concluded that Snyder was only joking or horsing around when he struck Chambliss in the face.

Deposition of Dennis Smith

35. Mr. Smith was employed by Amtrak sometimes in 1983. He is a managerial employee. He received complaints that employees made about managers. It was his responsibility as a manager of high-speed rail to deal with and to understand Amtrak's harassment policy and apply dealing with personnel decisions. racial harassment consisted of physical and verbal.  Racial harassment consisted of physical and verbal harassment.  Harassment. He would consider calling a person "nigger" a form of racial harassment. He would not consider it to be forms of racial harassment different person were called a bitch.  He does not consider a person being called a " jungle bunny" racial harassment. Amtrak has never defined "nigger" or "jungle bunny". His role was to gather facts to determine if that was racial discrimination or harassment.  He could make a determination as to whether or not there was racial harassment.  He could make a determination as to whether or not there was racial harassment.  He also investigates workplace violence. He was unable to give the definition of what Amtrak considers workplace violence.  Workplace violence could include threats, verbal threats; it can be the actual touching of a person, the harassment would-be

verbal or physical violence. A person who was making a claim of workplace violence must document the same. His investigation of workplace violence would include mainly statements from the person making the complaint, person or persons making the complaint, and he would order personnel action if the facts warrant it based upon the complaint. If upon his investigation, it reveals harassment, then, it is taken to a formal hearing and documents are generated. A formal investigation means that specific rules are identified that the person may have violated and as such how it goes into a formal proceeding. Page 46

36 A person may take a waiver or admit the wrong, and, then there would not be an informal hearing. He did not recall any complaints against Steven Snyder. He did not recall receiving a letter from a Mr. Charlus concerning Steven Snyder. Mr. Charlus wrote a letter dated August 22, 2000 to making a complaint concerning Mr. Snyder and his practice of racism. He did not recall receiving a letter. Exhibit two was a letter from is a letter from Betty Blair complaining of discrimination. He did not recall her letter either. Mr. Smith claims not to have remembered any investigations, or any of the letters that were presented to him in the form of complaints concerning Mr. Snyder. The only allegations he could remember concerning Mr. Charlus were verbal abuse and profanity.

37. He did not conduct any investigations with respect to complaints made by Harry Charlus, Lisa James, Tyra Jenkins, Carlos Alvarado, Phoung Hoang, nor Doria Washington, concerning Steven Snyder's racial conduct and the use of the words, jungle bunny's, nigger and bitch. He allegedly recalled conducting an investigation concerning the actions of Mr. Snyder, however, he could not specify

10

people who made the complaints.   Page 9-10, Page 17, Page 26, Page 27-28, page 29-31, 32-33, 35 – 36, 37, 38-30, 39-41, 45 – 46, 48-49, 49-50, 52-53, 49-53

38. Mr. Smith could not remember the investigations or the individuals who made the complaints.  Page 56-58. page 59 he was not denying that Betty Blair sent him a copy of Mr. Charlus letter.  Page 59

Other managers may have investigated the various charges of harassment, discrimination.  See pages 60-61

39. Mr. Smith was shown a letter that was marked as number one to the deposition that says "this is not the first time Snyder has approached me in a threatening manner and raised his voice at me."  Page 63-64 Smith agreed that workplace violence could be verbal; it can include profane language, and acting in a threatening manner.  Page 64.

40. He did not conduct a formal investigation.  He only spoke to Snyder.  Pages 64-65

41. The result of the investigation was just one conversation with Mr. Snyder. Page 65, page 66

42. If there were complaints and investigations concerning Steven Snyder, they would be included in his file.  Page 69.

43. He never recommended that the matter concerning Mr. Chambliss be made formal.  Page 72 -73

Respectfully Submitted,

Norris C. Ramsey

4105 Springdale Av.

Baltimore, Maryland 212 07

410-448-1996

Trial Bar Number 01453
