## <u>Table of Contents</u>

Table of Cases_____page 1-4

Statement of Facts_____page 1-3

Summary Judgment Standard of Review_____page 1-5

Genuine Issues of Facts in Dispute_____page 5-21

    1.  Plaintiff's Did Not Violate Amtrak's Policies_____page 5-7

    2.  Existence of Plaintiff's Injury_____page 7-8

    3.  Defendant's Articulated Reasons
      Is a Pretext for Racial Discrimination_____page 8-9

    4.  Defendant Snyder's Violation of Defendant Amtrak's Policies_____page 9-10

    5.  Defendant Amtrak's Investigation was Inadequate_____page 10-11

    6.  Finding of Arbitration Award is Not Binding_____page 11-12

    7.  While Plaintiff was Aware of Defendant Amtrak's Policies
      Defendant Breached Its Own Policies in Order to Punish Plaintiff__page 12

    8.  Application of Defendant Amtrak's
      Progressive Discipline Policy_____page 12-13

    9.  Defendant Retaliated Against Plaintiff
      Because Plaintiff's Sought to Protect his Civil Rights_____page 13-14

    10. Common Law Causes of Action are So
      Intertwined With the Federal Cause of Action
      (42 U.S.C 1981) That the Three Year Limitations Period
      Should Apply, Therefore Plaintiff's Claims Are Timely_____page 14-16

    11. Defendant Snyder's Interference
      With Plaintiff's Contractual Rights_____page 16-19

        1)  Defendant interfered with Plaintiff's contract
            With his employer by affecting the terms, conditions
            Privileges and contractual rights of his employment
            As well as his ability to perform pursuant to his employment
            contract_____page 16-18

2) Plaintiff, not Defendant Snyder was responsible
For Plaintiff's Suspension_____page 18

3) Plaintiff Received the Contractual Rights
To Which He was Entitled Pursuant To the
Collective Bargaining Agreement_____page 18-19

12. Plaintiff's Claim for
Intentional Infliction of Emotional Distress_____page 19-21

## Table of Cases

Anderson v. Liberty Lobby, Inc., 477 US 242, 247 (1986)          page 3

Fed. R.Civ. P. 56(c)          page 3

Lathram v. Snow, 336F.3d 1088 (D.C. Cir. 2003)          page 3

Reeves v. Sanderson Plumbing Prods. 530 US 133, (2000)          page 4

McDonnell Douglas Corp. v. Green, 411 US 792 (1973)          page 4

Carter v. George Washington Univ., 387F.3d 872, 878 (D.C. Cir. 2004).          Page 4

Tex. Dep't of Cmty. Affairs v. Burdine, 450 US 248, 253 (1981)          page 4

Swierkiewicz v. Sorema N.A., 534 US 506, 512 (2002)          page 5

Furnco Constr. Corp. v. Waters 438 US 567 (1978)          page 5

Brown v. Brody 199 F. 3d. 4 46, 452 (D.C. 1999)          page 5

Teneyck v. Omni Shoreham Hotel, 365F .3d 1139, 1150          page 5

Holbrook v. Reno 196F.3d 261 (D.C. Cir. 1999)          page 5

Bundy v. Jackson, Ickes 641 F.2d 934, 951 (D.C. Cir. 1981)          page 5

Burlington N. & S.F.R. Co. v. White, 126 S.CT.2405 (05-259 U.S. 2006)          page 8

McDonald v Santa Fe Trail Transp. Co., 427 U.S. 273 (1976)          page 9

Graham v. Long Island R.R. 230, F.3d 134 (2d Cir. 2000)          page 9

Chappelle – Johnson v. Powell, 440F.3d 484 (D.C. 2006)          page 9

Burlington N. & S.F.R. Co. v. White, 05-259 (U.S. 2006)          page 9

McDonald v. West Branch, 466 U.S. 284 (1984)          page11

Barrentine v. Arkansas-Best Freight System,Inc., 450 U.S. 728 (1981)          page 11

Alexander v. Gardner-Denver Co., 415 U.S. 36          page 11

Morgan v. Fed. Home Loan Home
 Loan Mortgage Corp. 328F.3d 647, (D.C. Cir. 2003)          page 13

**Burlington Indus., Inc. v. Ellerth**, 524 US 742 (1998)                    **page 14**

**Domino's Pizza, Inc. v. Donald** 126 S. Ct. 1246 (2006)                    **page 14**

**Mitchell v. Robert DeMario Jewelry, Inc.**, 361 U.S. 288,292 (1960)        **page 14**

**Banks v. Chesapeake And
Potomac Telephone Co**, *802 F.2d 1416* (D.C. Cir. 1986)                     **page 15**

**Crocker v. Piedmont Aviation, Inc.**, *49 F.3d 735* (D.C. Cir. 1995)        **page 15**

**Saunders v. Nemati**, 580 A.2d 660, 663-64 (D.C. 1990).                     **page 15**

**Spriggs v. Diamond Auto Glass**, 242 F.3d 179 (4th Cir. 2001)              **page 17**

**Causey v. Balog**, 162 F.3d 795, 801 (4th Cir. 1998)                       **page 17**

**Harris v. Forklift Sys., Inc.**, 510 U.S. 17, 23,
114 S.Ct. 367, 126 L.Ed.2d 295 (1993)                                        **page 17**

**Lissau v. Southern Food Serv., Inc.**, 159 F.3d 177, 183 (4th Cir. 1998)   **page 17**

**Airline Pilots Ass'n v Northwest Airlines**, 199 F.3d 477 (D.C. Cir. 1999) **page 19**

**Alexander v.Gardner-Denver Co.**, 415 U.S. 36 (1974)                       **page 19**

**Rodgers v. Western-Southern Life Ins**.Co., 12 F.3d 668, 675 (7th Cir. 1993) **page 20**

**Walker v.Thompson**, 214 F.3d 615, 626 (5th Cir. 2000)                     **page 20**

## Statutes

Title VII of the 1964 Civil Rights Act 42 USC 2000e et seq.

The 1866 Civil Rights Act. 42 USC 1981

Fed. R.Civ. P. 56(c)

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**


| | | |
|---|---|---|
| **JERRY CHAMBLISS** | * | |
| | * | |
| Plaintiff | * | |
| v. | * | Case No. 105cv02490 |
| | * | |
| | * | |
| National Railroad Passenger | * | |
| Corporation, Et Al. | * | |
| | * | |
| Defendant | * | |

**Plaintiff's Response to Defendant's Motion For Summary Judgment and**

**Memorandum in Opposition Thereof**

Plaintiff, Jerry K. Chambliss, by the undersigned attorney files this answer and

memorandum in opposition to defendants' motion for summary judgment.

**Facts**

Plaintiff Jerry Chambliss and Defendant Steven Snyder are both employees of the

Defendant National Railroad Passenger Corporation ("Amtrak"). Defendant Steven S. Snyder is

a white male and a foreman, and supervised the Plaintiff Chambliss during the time period

relevant to the Complaint for at least one day a week. On May 10, 2004, after having attended a

safety meeting, Defendant Snyder physically assaulted the Plaintiff, by throwing a book at

Plaintiff, striking him in the face. On that date, the Plaintiff reported the incident to the

management of the Defendant Amtrak. Plaintiff suffered injury to his face, and, filed a claim

under the Federal Employees Labor Act. As a result of this incident, Plaintiff was required to

miss time from work. Plaintiff filed a claim under the FELA, which was settled for $13,000.

The Defendant National Railroad Passenger Corporation terminated the Plaintiff on

August 13, 2004, accusing Plaintiff of making a false claim of injury, absenteeism and failure to report the injury in a timely manner. Plaintiff filed a grievance with his union, and as a result, the Plaintiff was reinstated to his employment without back pay. The arbitrator also ruled that Plaintiff's absenteeism was in violation of Amtrak's policy regarding absenteeism.

While Plaintiff was terminated from his employment, the Defendant Steven Snyder was given a two-day suspension that he was not required to serve. Defendant Amtrak was well aware that Steven Snyder had engaged in prior racist activities against minority employees. He had called African-Americans "jungle bunnies", "niggers" and "bitches", kicked a subordinate and engaged in racially discriminatory acts against minority employees including the Plaintiff.

As a result of his termination and disparate treatment by the Defendant Amtrak the Plaintiff filed a charge of discrimination with the EEOC. The EEOC issued Plaintiff a Right To Sue Letter. This lawsuit was filed as a result thereof.

Plaintiff's Complaint contains five (5) Counts against the Defendants Amtrak and Steven Snyder. Counts One and Two have been brought under Title VII of the 1964 Civil Rights Act and the 1866 Civil Rights Act. Count One alleges disparate treatment and that disciplinary action was taken against the Plaintiff because of his race in that The Defendant Amtrak engaged in disparate treatment by terminating the Plaintiff, who is African American, while Defendant, Steven Snyder, who is white, was not terminated. Count One alleges that the Defendants Steven S. Snyder and Amtrak discriminated against Plaintiff based upon his race. Further, Count One alleges that Steven S. Snyder and Amtrak violated the 1866 Civil Rights Act and Title VII of the 1964 Civil Rights Act when he was attacked and terminated while Steven Snyder was not terminated.

Count Two alleges that the Plaintiff was retaliated against by the Defendant Amtrak

because he spoke up against the violation of his Civil Rights, a Violation of Title VII of the 1964

Civil Rights Act, 42 USC 2000e et seq., and the 1866 Civil Rights Act, 42 USC 1981. Steven

Snyder is not sued in Count Two.

Count three alleges assault and battery, and it sues only the Defendant Steven Snyder.

This Count has brought as a result of Steven Snyder striking the Plaintiff in the face on May

10, 2004 with a safety manual.

Count Four alleges that Steven Snyder intentionally interfered with the Plaintiff's

economic relationship with his employer, Amtrak.

Count Five alleges that Defendant Steven Snyder intentionally inflicted emotional

distress upon the Plaintiff.

Plaintiff is also bringing this suit pursuant to the 1866 Civil Rights Act, 42 USC section

1981 and Title VII of the 1964 Civil Rights Act, 42 USC 2000e et seq.  Defendants Amtrak and

Steven S. Snyder have moved this Court for Summary Judgment on all Counts of Plaintiff's

Complaint. There is no requirement of exhaustion of administrative remedies for suits under the

1866 Civil Rights Act.

### Summary Judgment Standard of Review

Summary judgment is appropriate only if "'there is no genuine issue as to any material

fact and . . . the moving party is entitled to a judgment as a matter of law.'" **Anderson v. Liberty**

**Lobby, Inc.,** **477 US 242, 247 (1986) (quoting Fed. R.Civ. P. 56(c)).** A dispute about a material

fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-

moving party." **Id**. at 248. We must view the evidence in the light most favorable to the non-

moving party, draw all reasonable inferences in its favor, and eschew making credibility

determinations or weighing the evidence. **See Lathram v. Snow**, **336F.3d 1088 (D.C. Cir.**

**2003),** and also **Reeves v. Sanderson Plumbing Prods.**  530 US 133, **(2000)).**

In **McDonnell Douglas Corp. v. Green,** 411 US 792 **(1973),** the United States Supreme Court set out a burden-shifting approach to employment discrimination claims in cases where the plaintiff lacks direct evidence of discrimination.  While plaintiff has some direct evidence of discrimination, the argument will proceed.  Under **McDonnell Douglas**, the plaintiff "must carry the initial burden under the statute of establishing a prima facie case of racial discrimination." **Id. at 802**.  If the plaintiff meets this burden, "[t]he burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason" for its action. **Id.** If the employer succeeds, then the plaintiff must "be afforded a fair opportunity to show that [the employer's] stated reason . . . was in fact pretext" for unlawful discrimination. **Id.** at 804, The **McDonnell Douglas** framework applies to both Title VII and 42 U.S.C. 1981 claims. **Carter v. George Washington Univ.,** 387F.3d 872, 878 (D.C. Cir. 2004). The establishment of a  prima facie case, the **McDonnell Douglas** Court explained, may be done by showing (i) that [the plaintiff] belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications. **McDonnell Douglas** 411 U.S. 792, at 80. In setting forth these requirements, however, the Supreme Court emphasized that "[t]he facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required . . . is not necessarily applicable in every respect to differing factual situations." **Id. n. 13**. In a similar vein, the Court has made clear that "[t]he burden of establishing a prima facie case of disparate treatment is not onerous," **Tex. Dep't of Cmty. Affairs v. Burdine**, 450 US 248, 253 **(1981)** and that "the precise requirements of a prima facie case can vary depending on the context and were

`never intended to be rigid, mechanized, or ritualistic,'" **Swierkiewicz v. Sorema N.A., 534 US 506, 512 (2002) (quoting Furnco Constr. Corp. v. Waters 438 US 567 (1978) .** Given the Supreme Court's emphasis on flexibility, this Court has adopted a more general version of the prima facie case requirement: "the plaintiff must establish that (1) he is a member of a protected class; (2) he suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." **Brown v. Brody 199 F. 3d 446, 452 (D.C. 1999); Teneyck v. Omni Shoreham Hotel, 365F .3d 1139, 1150.**

## Genuine Issues of Facts In Dispute

Plaintiff concedes that he did not timely file his charge of discrimination with EEOC, and, Title VII is thus not applicable. Plaintiff adds however that 42 USC 1981 which provides the same relief is title VII is applicable, and allows Count One to survive a motion for summary judgment. (See Statement, Issue Number 15)

In the instant case, (1) Plaintiff is a member of a protected class, African-American (2) Plaintiff was attacked by a white foreman, Defendant Steven Snyder who had a history of using racial epithets and engaging in harassing and threatening conduct towards minority employees; (3) the white employee who attacked the Plaintiff despite his prior history of racial harassment, threatening conduct and racial discrimination was not terminated, while Plaintiff was.

Plaintiff submits that the material disputed facts contained in Plaintiff's Statement of Genuine Issues Necessary to be Litigated sets forth a prima facie case of racial discrimination with regard to Plaintiff's termination and satisfies **Brown's** elements, **see infra p. 489**. **Brown, 199 F.3d at 452, 446 see also,. Holbrook v. Reno 196F.3d 261 (D.C. Cir. 1999)** (stating burden as requirement to show "that plaintiff and [a] similarly situated person were treated disparately"; **Bundy v. Jackson, Ickes 641 F.2d 934, 951 (D.C. Cir. 1981) "**.

1.      **Plaintiff Did not Violate Amtrak's Policies**

The Defendant Amtrak's stated reasons for terminating Plaintiff are (1) excessive

absenteeism; (2) failure to report illnesses and injuries promptly; (3) and failure to tell the truth.

The facts relied upon by the Defendant in articulation of these reasons are in dispute.

(1)      Excessive absenteeism

The dates listed by the Defendant, particularly May 11-13 2004, were due to the

injuries Plaintiff sustained as a result of the acts of Defendant Snyder, and documented

by Dr. Gabor as dates that Plaintiff was under his care, as well as that of the Mental

Health Professional. The same is true as to the May 16, 2004 date. One or more of the

remaining  dates listed was excused because a bridge was out and while some supervisors

excused such lateness, and the Defendant excused them with regard to its white

employees, but not the Plaintiff, a minority, the Defendant is utilizing this date in an

attempt to establish that the Plaintiff violated its attendance policy, and to justify its

retaliatory actions against the Plaintiff for complaining about its discriminatory practices

and patterns of disparate application of its stated and written policies to its minority

employees. (See Statement, Issue Number 13)

(2) Failure to report injury

Plaintiff, immediately after the incident, attempted to speak with his supervisors

regarding the incident, but they refused to do so. See Plaintiff's Statement of Genuine

Issues ("Statement" Issue number 4). Further, witnesses to the incident, as well as

Plaintiff's union representative, Mr. Mascetti, testified that the Plaintiff was obviously

upset after the incident, and that the management refused to meet with Plaintiff in the

presence of the union representative.

(3) Failure to tell the truth

Defendant Amtrak determined that as Defendant Snyder's actions in striking Plaintiff in the face with a book was not workplace violence because Defendant Snyder was "joking", and that therefore any injuries or complaints flowing from these actions were the result of Plaintiff's dishonesty in violation of Defendant Amtrak's policy regarding same. The facts clearly show that Defendant Amtrak had witnesses provide information that they had seen Plaintiff before, during and after being stuck by Defendant Snyder, and that after being stuck, Plaintiff was extremely upset. Managers for Defendant Amtrak, while supposedly investigating the incident, gave those employees statements credence only to the point that they acknowledge that Defendant Snyder had indeed struck the Plaintiff. When determining that Plaintiff lied about his injuries, Defendant totally ignored medical documentation. (Statement, Issue Number 3, 4,5)

2.    **Existence of Plaintiff's Injury**

Defendants claim that Plaintiff was not injured. Plaintiff notified Defendant that he was taking off the day following the incident due to stress, by calling into the "call out" line. Plaintiff was seen by Defendant's Mental Health Care physician, who ordered Plaintiff to remain out of work, and also Dr. Jeffrey Gabor, who provided Plaintiff with a disability slip rendering him unable to return to work until after May 17, 2004.  Dr. Gabor also issued a report documenting Plaintiff's Physical injuries as the result of the incident.

 The Supreme Court has clearly determined that Plaintiff's emotional stress as the result of the incident is an "injury", as applied to a claim of retaliation and the Plaintiff clearly had a

fear of economic harm, as the result of Defendant Amtrak's practice of retaliating against employees that attempted to object to the hostile workplace established thereby. **Burlington N. & S.F.R. Co. v. White**, **126 S.CT.2405 (05-259 U.S. 2006).** It is undisputed that Plaintiff was undergoing extreme emotional stress immediately after, and for the entire day following the incident. (See "Statement, Issues Number 7, 9)

**3.      Defendant's Articulated Reasons is a Pretext for Racial Discrimination**

Defendant is required to articulate legitimate, no-discriminatory reasons for taking adverse actions against the Plaintiff. **McDonnell Douglas, Supra**. Defendant claims that it had legitimate, non-discriminatory reasons for taking adverse employment actions against the Plaintiff. Plaintiff submits that all reasons articulated by the Defendant are a pretext for racial discrimination.

The Defendant's own internal memorandum shows that the Defendant was (1) aware that Plaintiff had complained about discrimination on numerous occasions in the past, and (2) was yet again complaining of same in reference to this incident. (Statement, Issues Number 4, 5, 9, and 12). The internal memorandum goes on to state management's intention to charge Plaintiff with the articulated violations of Defendant Amtrak's policies as a result of Plaintiff's discrimination complaints. Plaintiff provided documentation of his condition from his treating physician, as well as the Defendant's approved mental health professional (Statement, Issue Number 7)  Defendant wishes the Court to accept the conclusion that because they refused to accept Plaintiff's report of injury when he attempted to make same, refused to accept medical documentation of Plaintiff's injuries, and refused to accept that Plaintiff did not accept his being assaulted by Defendant Snyder as being a joke, that  Plaintiff was not injured, lied about being injured, did not report his injuries, and any time taken off as a result of his injuries was violative of their attendance policy.

Unfortunately, the standard the Defendant wishes the Court to accept is not the standard articulated by the US Supreme Court. In the case of **McDonnell Douglas, Supra**, the Court provided that where an employer has policies against certain activities, those polices must be applied alike to employees of all races. Where, as here, the only reason for the policies being applied differently to the Plaintiff and Defendant Snyder is that Plaintiff is black, and Snyder is white, the Defendant Amtrak's termination of Plaintiff for violation of the policy is a pretext for discrimination. See also **McDonald v Santa Fe Trail Transp. Co.,** **427 U.S. 273 (1976)**

Plaintiff submits that the difference in treatment between he and Steven Snyder received with regards to violations of Defendant Amtrak's policies clearly shows that Defendant Amtrak engaged in behavior that was discriminatory on its face, and the facts that are in dispute shows that there was disparate treatment engaged in by the Defendant Amtrak, and that evidence along with the history exhibited by Defendant Snyder, Amtrak's foreman, concerning race, threats and harassment, also indicates that the Defendant's stated reasons for terminating Plaintiff was a pretext for discrimination. **See, e.g. Graham v. Long Island R.R.** 230, F.3d 134 (2d Cir. 2000) (explaining that a showing of differential treatment can "serve as evidence that the [defendant's] proffered legitimate, non-discriminatory reason for the adverse . . . action was a pretext for racial discrimination"). **Chappelle – Johnson v. Powell, 440F.3d 484 (D.C. 2006)**

4.     **Defendant Snyder's Violation of Defendant Amtrak's Policies**

Defendant Amtrak claims that Plaintiff violated its Standards of Excellence Policy because he lied about his injury, and that violation was sufficient to terminate him. However, they also claim that the application of this same policy to Defendant Snyder shows that there was

no discrimination against Plaintiff. All facts surrounding the application of Defendant Amtrak's policies to Plaintiff, and Plaintiff's violation of same are in dispute.

Defendant Snyder violated Defendant Amtrak's "Standards of Excellence" policy on at least two (2) occasions and its "Anti-Discrimination and Anti-Harassment" policies on numerous occasions. He was disciplined by receiving a suspension and a demotion.(Statement, Issue numbers 5 and 11) Defendant Amtrak refused to adequately investigate numerous charges by various Amtrak employees of Snyder's continual violations of its "Anti-Discrimination and Anti-Harassment" policy. Snyder was not terminated in spite of Amtrak's concern that Snyder was under the influence of drugs and/or alcohol on one of these occasions (Defendant has failed to provide the results of the drug/alcohol test conducted, so Plaintiff cannot make any further statement as to Snyder's actually having been under the influence). Plaintiff was terminated. Termination has been held by the Courts to be an "adverse action", and when done for reasons that are discriminatory, give rise to liability on the part of the employer. See **Burlington N. & S.F.R. Co. v. White,** 05-259 (U.S. 2006)

5.    **Defendant Amtrak's Investigation was Inadequate**

Defendant Amtrak did not adequately investigate the May 10, 2004 incident where Defendant Snyder struck Plaintiff. The sworn testimony of Amtrak's employees makes clear that the Company was not really interested in the truth, and had already decided that Defendant Snyder had done nothing wrong. They made light of the entire matter, and only decided to take action after Plaintiff continued to complain of discrimination. (Statement, Issue Number 4, Defendant Amtrak ignored the statements given by its minority employees, and only gave credence to that given by Defendant Snyder. (Statement, Issue Number 4). The Deposition of Dennis Smith, (Statement, Issue Number 5,) and of Dawn Marcella of the Diversity office, as

well as the Defendant Amtrak's internal memorandum, clearly shows the lack of intention by Amtrak to consider Plaintiff's concerns about his treatment as real concerns, and to a clear intent to once again condone the racist activities of Defendant Snyder.

**6.    Finding of Arbitration Award Is Not Binding**

Defendant requests that the Court accept as undisputed facts the factual findings of the Arbitration Board. However, the Defendant apparently wishes to only rely on certain findings of the Arbitration Board, and ignore others. The Arbitration Board found that while Plaintiff had violated Amtrak's attendance policy, that violation did not justify Plaintiff's termination. Plaintiff submits that both the factual findings and the award of the Arbitration Board are disputed issues of material fact.

The Arbitration Board issued factual findings stating that Plaintiff violated Defendant Amtrak's attendance policies and that the book that Struck Plaintiff weighted four (4) ounces. The Board issued an award reinstating Plaintiff to his position, but denying him back pay as a punishment, the law provides that the neither the factual findings nor the decision of the Arbitration Board is binding on this Court and neither have any preclusive effect. Further, to the extent that the Defendant attempts to rely upon an expert witness who testified at the arbitration hearing, same is not binding and it cannot be relied upon as an undisputed fact for purposes of a motion for summary judgment as held by the US Supreme Court in **McDonald v. West Branch**, **466 U.S. 284 (1984)**, where the Court stated **"arbitral fact-finding is generally not equivalent to judicial fact-finding"**. See also **Barrentine v. Arkansas-Best Freight System,Inc., 450 U.S. 728 (1981),  and Alexander v. Gardner-Denver Co., 415 U.S. 36**, where the Court specifically found **that "[t]he record of the arbitration proceedings is not as complete; the usual rules of evidence do not apply; and rights and procedures common to civil trials, such as discovery,**

**compulsory process, cross-examination, and testimony under oath, are often severely limited or unavailable**." **415 U.S., at 57-58**  (Statement, Issue Number 9)

7.     **While Plaintiff was Aware of Defendant Amtrak's Policies, Defendant Breached Its Own Policies in Order to Punish Plaintiff**

Defendant claims as undisputed the fact that Plaintiff was aware of Defendant's policy regarding the reporting of workplace injuries. Plaintiff agrees that this is an undisputed fact. Plaintiff further agrees that all Amtrak employees are required by the Company's Standards of Excellence to " immediately report to your supervisor all injuries and illnesses that occur…", and the record reflects that it is an undisputed fact that Plaintiff complied with this policy. Plaintiff disputes, however, Defendant's contention that he had numerous prior workplace injuries during his employment with the Defendant. It is an undisputed fact that Defendant Steven Snyder was his supervisor, and was immediately aware of Plaintiff's injury, and that Defendant Snyder's supervisor refused to speak with Plaintiff on the date of the incident or fully investigate the incident, and refused to receive Plaintiff's report of injury. It is further undisputed that Defendant refused to allow Plaintiff to make a formal report of injury until after becoming aware that Plaintiff was once again, complaining of discrimination. (See Statement, Issue Number 10)

8.     **Application of Defendant Amtrak's Progressive Discipline Policy**

Defendant states as an undisputed fact that Amtrak "established" that Plaintiff violated its national systems attendance policy. It is undisputed that at all times relevant to this action Defendant Amtrak had a progressive disciplinary policy in place, which Plaintiff was subject to. Defendant Amtrak made the false allegations against Plaintiff due to his continuing to make complaints of discrimination and disparate treatment. Application of Defendant's progressive

disciplinary policy to Plaintiff did not require the Plaintiff to be terminated, and the attendance issue was not sufficient to justify Plaintiff's termination pursuant to same. Plaintiff further states that Defendant Amtrak, while having a progressive discipline policy, applied that policy, and indeed, its policies concerning discrimination and workplace violence, in a disparate manner, depending on the race of the employee. (See Statement, Issue Number 12)

9.    **Defendant Retaliated Against Plaintiff Because Plaintiff Sought to Protect his Civil Rights**

The 1866 Civil Rights Act forbids an employer from discriminating against an employee or job applicant because that individual "opposed any practice" made unlawful by Title VII or "made a charge, testified, assisted, or participated in" a Title VII proceeding or investigation. § 2000e-3(a).

In order to make out a prima facie case of retaliation, Plaintiff must show;(1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment action; and (3) there is a causal connection between the two. **See <u>Morgan v. Fed. Home Loan Home Loan Mortgage Corp</u>. 328F.3d 647, (D.C. Cir. 2003).** The attached Statement, and attachments thereto, sets forth evidence that makes out a prima facie case for retaliation. Plaintiff engaged in civil rights activity prior to his termination by writing a letter complaining of discrimination with regard to a February 7, 2003 incident and the fact that he was concerned about his employment with Amtrak.  (See Statement, issue Number 12, 15, and 16). Plaintiff complained to Defendant Amtrak after the attack on him by Defendant Snyder, complaining that had Defendant Snyder been African-American, Plaintiff would've been taken off of the job.  Further, a June 22, 2004 memorandum of the Defendant Amtrak acknowledges their awareness that the Plaintiff was complaining of racial discrimination with regards to the incident. The handwritten memorandum

13

of the Defendants reveals the same, and, a case manager intake form also provides evidence that Plaintiff was complaining of racial discrimination. This evidence shows that Plaintiff engaged in civil rights activity, and, an adverse employment action, termination, was taken against him. While Plaintiff was subsequently reinstated, he was denied back pay for the time he was out of work, as a punishment, thereby suffering an adverse employment action as the result of Defendant's retaliation.

An "adverse employment action" within the meaning of **McDonnell Douglas** is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." **Burlington Indus., Inc. v. Ellerth**, 524 US 742 (1998), **Brown v. Brody, supra**; **Domino's Pizza, Inc. v. Donald** 126 S. Ct. 1246 (2006). As the result of Defendant's retaliatory actions Plaintiff's family had to survive without his income, and, once he found another job, he was paid much less. The Court, In **Mitchell v. Robert DeMario Jewelry, Inc.**, 361 U.S. 288,292 (1960), found that an indefinite suspension without pay could well act as a deterrent, even if the suspended employee eventually received back pay. The Court Stated"[I]t needs no argument to show that fear of economic retaliation might often operate to cause aggrieved employees to quietly to accept substandard conditions". Thus, termination of the Plaintiff and then reinstatement without back pay was materially adverse employment action, which is actionable

**10.    Common Law Causes of Action are So Intertwined With The Federal Cause of Action (42 USC 1981) That The Three Year  Limitations Period Should  Apply, Therefore Plaintiff's Claims Are Timely**

Defendant claims that the District of Columbia's one year statute of limitations should apply to this action for the common law tort of assault and battery, as opposed to the three year

statute of limitations. The common law torts alleged in this cause of action are intertwined with the civil rights action under 42 USC 1981, thus, they are all governed by a three year limitations period.

The Court has definitively stated that the three-year statute of limitations applicable to personal injury suits controls actions brought under 1866 Civil Rights Act, 42 USC 1981 in the District of Columbia. See **Banks v. Chesapeake And Potomac Telephone Co**, *802 F.2d 1416* **(D.C. Cir. 1986),** and also **Crocker v. Piedmont Aviation, Inc.,** *49 F.3d 735* **(D.C. Cir. 1995).** Further, the Court held that the three year statute of limitations applies to intentional *economic* torts such as tortious interference with contract or fraud. **Saunders v. Nemati,** 580 A.2d 660, **663-64 (D.C. 1990).** The action filed by the Plaintiff is based on 42 USC 1981, was filed within the three year limitations period, and therefore is not time barred.

The assault by Defendant Snyder on the Plaintiff was but one of the actions taken which gave rise to the civil rights cause of action. The inference to be drawn in favor of the Plaintiff as required by summary judgment standards is that all of the causes of action alleged in the Complaint arose out of the civil rights violations. It is undisputed that this action arises out of the 1866 Civil Rights Act, 1981.That is, Defendant Steven Snyder had exhibited racism over a significant period of time, which the corporate Defendant was aware of before Snyder attacked the Plaintiff (See Statement, Issue Number 11) . Subsequent to the attack, he continued to follow the Plaintiff around allegedly to apologize, which he never did. Defendant Amtrak was aware of this, as Plaintiff complained to them about Defendant Snyder following him, and his discomfort with same.

It is clear that Defendant Snyder violated the common law torts alleged by the Plaintiff. He assaulted Plaintiff on May 10, 2004 by throwing the book at Plaintiff, after announcing his

intent to do so. Defendant Snyder battered the Plaintiff by striking Plaintiff with the book

Plaintiff did not consent to the touching. The assault continued when Defendant Snyder followed

Plaintiff around, causing him to be placed in fear of bodily harm. The Courts have found this

conduct to be assault and battery. This activity of Defendant Snyder prevented Plaintiff from

engaging in economically significant activity free from racially discriminatory interference See

**Harris v. Forklift Systems, infra**

**11.    Defendant Snyder's Interference with Plaintiff's Contractual Rights**

Defendant claims that the Plaintiff's claim that Defendant Snyder interfered with his

contractual relationship should fail for three reasons; (1) that Defendant Snyder did not

participate in any decision affecting Plaintiff's employment, that (2) Plaintiff, not Defendant

Snyder was responsible for Plaintiff's suspension; and that (3) Plaintiff received the contractual

rights to which he was entitled. Plaintiff will deal with each  contention separately.

**1) Defendant interfered with Plaintiff's contract with his employer by affecting the terms, conditions, privileges and contractual rights of his employment , as well as his ability to perform pursuant to his employment contract**

Defendant claims as undisputed fact that Defendant Snyder did not make any decisions

which affected Plaintiff's employment, as the decision to terminate Plaintiff was made by more

senior employees. It is undisputed that Defendant Snyder was Plaintiff's supervisor at the time of

the incident giving rise to this suit. It is also undisputed that Defendant Snyder had a history of

taking inappropriate actions and making racist and demeaning statements to the minority

employees under his supervision. It is also undisputed that Plaintiff is a minority.

The actions of Defendant Snyder, a supervisor for Defendant Amtrak, in calling his

subordinate employees names, such as "nigger", "jungle bunny", and 'bitches", and to engage in

physically threatening behavior towards these persons because of their race has been held by the Court to be "sufficiently severe or pervasive (or both) to cause a person of ordinary sensibilities to perceive that the work atmosphere …was racially hostile." **Spriggs v. Diamond Auto Glass, 242 F.3d 179 (4th Cir. 2001).**

Further, such action has been determined to be (1) unwelcome ;(2) based on race; and (3) sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere. See also **Causey v. Balog, 162 F.3d 795, 801 (4th Cir. 1998).** Further, the abuse need not be directed at the Plaintiff. The Court stated, in the case of **Harris v. Forklift Sys., Inc., 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)**. "Relevant considerations may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. **Id**. To be actionable, the conduct must create an objectively hostile or abusive work environment, and the victim must also perceive the environment to be abusive." **Lissau v. Southern Food Serv., Inc., 159 F.3d 177, 183 (4th Cir. 1998) (citing Harris).** It should be noted that the relevant perception is that of the employee, not the supervisor. The Court does not provide justification for such prohibited behavior. Therefore, Defendant's insistence that because the Defendant Snyder was "joking", carries no weight when applied to this action. It is an undisputed fact that Plaintiff, here was aware of Defendant Snyder's racist activities regarding the minority workers he supervised, that Defendant Snyder had been engaging in this behavior for years, and that Plaintiff was made uncomfortable and suffered stress as the result of such behavior, to the point of necessitating treatment by a mental health professional (See Statement, Issue Number 17).

    2)    **Plaintiff, not Defendant Snyder was responsible for Plaintiff's Suspension**

Defendant claims as undisputed fact that Defendant Snyder's actions had no part in Plaintiff being terminated, and that Plaintiff is solely responsible for same. Defendant Snyder by his actions, interfered with Plaintiff's ability to perform his employment contract with Defendant Amtrak, in violation of the 1866 Civil Rights Act, 42 U.S.C. 1981. Defendant relies upon the discriminatory application of Defendant Amtrak's progressive discipline policy, and the failure of Defendant Amtrak to adequately investigate Plaintiff's Complaint of discrimination, and the use of a pretext by Defendant Amtrak to again condone and excuse the behavior of Defendant Snyder. d Each and every fact relied upon by Defendant with regard to this issue in a material fact in dispute. (See Statement, Issues Number 2-15, 16)

**3)      Plaintiff Received the Contractual Rights to Which He was Entitled Pursuant to the Collective Bargaining Agreement**

Defendant claims as undisputed that as Plaintiff acknowledged the existence of a collective bargaining agreement between Defendant Amtrak and Plaintiff's union, that the collective bargaining agreement represented the only contract applicable to Plaintiff's employment with Amtrak, and the only agreement which Defendant Snyder could have interfered. Defendant further claims that the collective bargaining agree represents the sum of all Plaintiff's rights with regard to Defendant Amtrak.

The existence of an arbitration hearing pursuant to a collective bargaining agreement or an award made as the result of same is not relevant to this case, and has no effect hereupon, as a matter of law ( See Statement, Issue Number 6, and number 5, above) Further, the Courts have specifically stated that the existence of a collective bargaining agreement does not divest employees of their statutory rights, and the employment relationship is a contractual relationship,

and "even an at-will employment relationship may serve as a predicate contract for 1981 claims." See **Spriggs, supra**

Further, the courts have held that the existence of a collective bargaining agreement does not preclude the existence an employee's statutory rights, nor does the union have the authority to bargain away the statutory rights of any of its members. See **Airline Pilots Ass'n v Northwest Airlines**, **199 F.3d 477 (D.C. Cir. 1999).**  The fact that an arbitration hearing was held is irrelevant to whether or not Plaintiff's rights to contract with his employer under the 1866 Civil Rights Act 1981. The Plaintiff has a statutory right to make and enforce contracts, and to not have that right interfered with because of discrimination, notwithstanding the existence of a collective bargaining agreement. See also **Alexander v.Gardner-Denver Co.**, **415 U.S. 36 (1974)**

**12.    Plaintiff's Claim for Intentional Infliction of Emotional Distress.**

Defendant claims that Plaintiff's fails to state a claim for emotional distress, and that if Plaintiff does state such a claim, it is time barred, as it is intertwined with the claim for assault and battery. Defendant states as undisputed that all of Plaintiff's claims arise of out of the Defendant Snyder striking Plaintiff with a book. As stated previously, Plaintiff's cause of action arose because Defendant Snyder engaged in consistently discriminatory behavior towards Plaintiff and his co-workers, over a period of years. Such behavior was unwelcome, based on race, sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere, and triable issues exist with regard to each of these elements. Further, the1866 Civil Rights Act 1981 provides a basis for imposing liability. See **Spriggs, supra.**

It is undisputed that Plaintiff suffered from emotional distress as the result of the actions of the Defendant Snyder in creating and maintaining a hostile work environment, that the actions

of the Defendant Snyder were only one of many times where he engaged in egregious conduct

that was not seen as a joke by his subordinate employees. It is also undisputed that Plaintiff was

aware and made uncomfortable by the conduct of the Defendant prior to being stuck in the face

by Defendant Snyder, and had complained to Defendant Amtrak about discrimination and

mistreatment of employees due to race prior to this incident.

It is further undisputed that prior to the Plaintiff being struck in the face, Defendant

Snyder had been made aware that his behavior was disturbing and considered to be abusive by

the numerous minority employees, co-workers of the Plaintiff  who complained of his actions to

Defendant Amtrak's Diversity Office. Defendant Snyder's behavior continued after Plaintiffs'

being struck in the face, with Defendant Snyder following Plaintiff around the workplace, and to

the bathroom, which Plaintiff complained about. Plaintiff's claim for intentional infliction of

emotional distress is intertwined, not with his assault by Defendant Snyder, but with the racial

discrimination practiced by Defendant Snyder, which Defendant Snyder had been made aware of

by Defendant Amtrak's Diversity Office as the result of complaints having been made against

him.

As a result of this intertwining, the Court determined that  the three year statute of

limitations applies to such an intentional tort See **Saunders v. Nemati,**, supra,. (Also see

Statement, Number 17)

The conduct that Defendant Snyder engaged in has been determined to be pure anathema

to African-Americans, **Spriggs, supra.** See also **Rodgers v. Western-Southern Life Ins.**

**Co., 12 F.3d 668**, **675 (7th Cir. 1993)**; degrading and humiliating in the extreme. **See Walker**

**v.Thompson, 214 F.3d 615**, **626 (5th Cir. 2000 ;)** the results of such treatment has been

determined and the resulting loss of livelihood suffered by Plaintiff has been deemed

20

emotionally stressful, and actionable. **Burlington N. & S.F.R. Co. v. White**, supra. (See also Statement, Issue Number 7-10).

      **Wherefore,** premises considered, Plaintiff respectfully prays as follows that the Court Deny Defendant's Motion for Summary Judgment, and grant all further relief as the Court deems appropriate

                                    Respectfully Submitted,


                                _____

                                Norris C. Ramsey
                                4105 Springdale Avenue
                                Baltimore, Maryland 21207
                                410-448-1996
                                DC Bar Number