IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JERRY CHAMBLISS** * | |
| * | |
| Plaintiff * | |
| v. * | Case No. 105cv02490 |
| * | |
| * | |
| National Railroad Passenger * | |
| Corporation, Et Al. * | |
| * | |
| Defendant * | |

## Plaintiff's Statement of
## Genuine Issues Necessary to be Litigated

Jerry Chambliss, Plaintiff, in response to the Defendant's Motion for Summary Judgment, and in compliance with Local Rule 56.1 of the Local Rules of the United Stated District Court for the District of Columbia, and in response to Defendants Statement of Material Facts not in Dispute designates the following genuine issues which are necessary to be litigated and material disputed facts as relative thereto, states:

1. **Plaintiff's Employment by Defendant Amtrak**
   - Plaintiff agrees that he was first employed by the Defendant in 1989. Plaintiff agrees that he is a black man of African American descent.

   - Plaintiff agrees that Defendant Steven Snyder supervised him during the time period relevant to the Complaint for at least one day a week. Plaintiff agrees that Defendant Snyder is a white man.

2. **Plaintiff's Violations of Amtrak's Policies**

   - Plaintiff disagrees that throughout his employment he has been repeatedly disciplined for violations of Amtrak's attendance policy, insubordination, and other examples of misconduct. Plaintiff has fully complied with the Defendant's policies, in spite of Defendant's failure to apply its stated policies in an equitable manner to members of all races.

   - See Plaintiff's Deposition Attachment 2A , see portion of Plaintiff's Personnel Attachment 2, pages 1-4, see deposition of Dennis Smith, Attachment 6, pages 15-108 ; and see Deposition of Dawn Marcelle, Attachment 8, pages 7-30.

3. **Defendant Snyder's Actions on May 10, 2004**

1

- Plaintiff agrees that on May 10, 2004, Defendant Steven Snyder threw a book at him. Plaintiff, and further states that the book was thrown by Defendant Snyder as if he were throwing a fast ball. The book struck Plaintiff in the face with enough force to result in a loud noise.

- Prior to striking Plaintiff in the face with the book, Defendant Snyder had blown his nose on a tissue and thrown the soiled tissue towards Plaintiff who was seated at the table, eating breakfast, and speaking with another co-worker . When Plaintiff commented, asking Defendant Snyder if he had been trying to hit him, Defendant replied "No, this is trying to hit you", and threw the book.

- See testimony of Pamela Bunch, transcript of Arbitration Hearing, Attachment 12, pages 208-231; see testimony of Stacey Deffenbaugh, transcript of Arbitration Hearing, Attachment 12, pages 232-236; see Plaintiff's testimony, transcript of Arbitration hearing, Attachment 12, pages282-325; see Deposition of Doria Washington, Attachment 7, pages 8-18. See Plaintiff's Deposition, Attachment 2A; See Witness Statements, Attachment 13.

4. **Defendant Amtrak's Investigation**

- Plaintiff disagrees that the Defendant Amtrak adequately investigated his claims regarding Defendant Snyder. The managers who investigated the complaint interviewed some of the witnesses and acted as if they did not desire to discuss the entire matter, and had already made up their minds as to what the truth was. When the Plaintiff and union representatives went to management to report Defendant Steven Snyder's conduct, Defendant Amtrak refused to meet with them, refused to allow Plaintiff to meet with them in the presence of the Union representative, refused to begin an immediate investigation, and failed to abide by their own policies regarding workplace violence, they were thrown out of the office on two occasions.

- Plaintiff further states that Defendant Amtrak's response to this incident was consistent with their previous pattern of ignoring complaints made by minority employees regarding Defendant Snyder.

- Plaintiff does not agree that the Defendant investigated Plaintiff's conduct regarding the incident complained of in his complaint. Plaintiff states that he had filed prior charges of discrimination, and, that after it became aware that Plaintiff was claiming discrimination with regard to his treatment on May10, 2004 and thereafter, Defendant Amtrak decided to retaliate against him for filing said claim(s). Defendant by charging him with violating its attendance policy; and that to accomplish this, Defendant refused to acknowledge any and all documentation provided by Plaintiff from Dr. Gabor and its own mental health counselor regarding Plaintiff's injuries. It refused the attempts by Plaintiff and his union representative to report Plaintiff's injuries, and ignored Defendant Snyder's documented history of engaging in racially motivated threatening behavior and violence towards Defendant Amtrak's minority employees. Defendant Amtrak determined that as Defendant Snyder's actions in

striking Plaintiff in the face with a book was not workplace violence because Defendant Snyder was "joking", and that therefore any injuries or complaints flowing from these actions were the result of Plaintiff's dishonesty in violation of Defendant Amtrak's policy regarding same.

- See Plaintiff's Deposition, Attachment 2A; see testimony of Mr. Mascetti, union representative, portions of transcript of Arbitration hearing, Attachment 12, pages 193-207;see Deposition of Doria Washington, Attachment 7, pages 8-18, 19-36; see Deposition of Carlos Alvarado, Attachment 10, pages12-28, 31-33; see Deposition of Harry Charlus, Attachment 9, pages 8-24; see Deposition of Dennis Smith, Attachment 6, pages 5-108; see Deposition of Dawn Marcelle, Attachment 8, pages 7-30 of attachments. See internal management memorandum regarding incident, Attachment 1;. See testimony of Pamela Bunch, transcript of Arbitration Hearing, Attachment 12, pages 208-231; See Deposition of Christopher Bello, Attachment 11

5. **Defendant Snyder's View of the Incident**

- Plaintiff agrees that Defendant Steven Snyder considered his actions a joke, however states that plaintiff did not consider it to be a joke, and the Defendants were so informed.

- Plaintiff further states the action by Defendant Steven Snyder passing his actions off as a joke, and Defendant Amtrak's response to same, is consistent with the Defendant Amtrak's pattern of supporting and condoning Defendant Snyder's violation of Plaintiff's civil rights, and the civil rights of minority employees working with Defendant Snyder, as the incident before the bar was not the first nor last time complaints had been made to Defendant Amtrak regarding Defendant Snyder's racist behavior, inappropriate conduct towards minorities; on each occasion, Defendant Snyder considered it a joke; on each occasion the involved employee was a minority and did not consider his actions a joke; and on each occasion, little or no disciplinary action was taken against Defendant Snyder by Defendant Amtrak. This behavior by the Defendant Amtrak encouraged and enabled the continuing bad behavior of Defendant Snyder, and created and maintained a hostile work environment for the Plaintiff, and his minority co-workers.

- See testimony of Defendant Snyder, portions of transcript of Arbitration Hearing, Attachment 12, pages 101-120, 123-130; Statement of Defendant Snyder, Witness Statements, Attachment 13, Plaintiff's Deposition, Attachment 2A; Deposition of Doria Washington, Attachment 7 pp8-18, 19-36; see Deposition of Carlos Alvarez, Attachment 10, pp p12-28, 31-33; see Deposition of Harry Charlus, Attachment 9, pp 8-24, see Deposition of Dennis Smith, Attachment 6, pages 5-108; see Deposition of Christopoher Bello, Attachment 11; See testimony of Pamela Bunch, portions of transcript of Arbitration Hearing, Attachment 12, pages 208-231; see Deposition of Dawn Marcelle, Attachment 8 pages 7-30; See internal management memorandum regarding incident, Documents Concerning Plaintiff's Notice to Defendants Concerning Discrimination Including EEOC Documents, Attachment 1.

3

6. **Finding of Arbitration Award**

- Plaintiff agrees that the Arbitration Board issued factual findings stating that Plaintiff violated Defendant Amtrak's attendance policies and an award reinstating Plaintiff to his position, but denying him back pay as a punishment, but states that the neither the factual findings nor the decision of the Arbitration Board is binding on this Court and that neither have any preclusive effect.

- The arbitration award is not binding, and, to the extent that the Defendant attempts to rely upon an expert witness who testified at the arbitration hearing, same is not binding and it cannot be relied upon as an undisputed fact for purposes of a motion for summary judgment as held by the US Supreme Court in **McDonald v. West Branch**, 466 U.S. 284 (1984), where the Court stated **"arbitral fact-finding is generally not equivalent to judicial fact-finding".** See also **Barrentine v. Arkansas-Best Freight System,Inc.,** 450 U.S. 728 (1981),  **and Alexander v. Gardner-Denver Co.,** 415 U.S. 36, where the Court specifically found **that "[t]he record of the arbitration proceedings is not as complete; the usual rules of evidence do not apply; and rights and procedures common to civil trials, such as discovery, compulsory process, cross-examination, and testimony under oath, are often severely limited or unavailable**." 415 U.S., at 57-58

- Plaintiff disagrees that the book with which he was struck weighed four (4) ounces. Defendant cites the statements made in the arbitration award as facts which are not in dispute Plaintiff agrees the book struck him in the face, and did not knock his glasses off his face.

- See Plaintiff's Deposition, Attachment 2A

7. **Existence of Plaintiff's Injury**

- Plaintiff disagrees that he was not injured. Plaintiff notified Defendant that he was taking off the day following the incident due to stress, by calling into the "call out" line. Plaintiff was seen by Defendant's Mental Health Care physician, who ordered Plaintiff to remain out of work, and also Dr. Jeffrey Gabor, who provided Plaintiff with a disability slip rendering him unable to return to work until after May 17, 2004. Dr. Gabor also issued a report documenting Plaintiff's physical injuries as the result of the incident.

- The Supreme Court has clearly determined that Plaintiff's emotional stress as the result of the incident is an "injury", as applied to a claim of retaliation and the Plaintiff clearly had a fear of economic harm, as the result of Defendant Amtrak's practice of retaliating against employees that attempted to object to the hostile workplace established thereby. **Burlington N. & S.F.R. Co. v. White**, **126 S.CT.2405 (05-259 U.S. 2006).** It is undisputed that Plaintiff was undergoing extreme emotional stress immediately after, and for the entire day following the incident.

4

- Plaintiff disagrees that he "decided" he was injured on May 11, 2004. Plaintiff's injuries began to manifest themselves on the date of the incident in full view of his co-workers. Further, Plaintiff attempted to inform the Defendant on May 10, 2004 that he was injured, and they refused to consider having any conversation with him.

- Plaintiff agrees that he completed his shift, working the entire day.

- Plaintiff states as an undisputed fact that his FELA claim related to this incident was settled for $13,000.

- See Plaintiff's Deposition Attachment 1. See Dr. Gabor's return to work slip, and medical report of Dr Jeffrey Gabor, Medical Records of Dr. Jeffrey D. Gabor And Associates, Attachment 3; Deposition of Doria Washington, Attachment 7, pp8-18, 18, 19-36; See testimony of Pamela Bunch, transcript of Arbitration Hearing, Attachment 12, pages 208-231; see Testimony of Mr. Mascetti, union representative, portions of transcript of Arbitration hearing, Attachment 12, pp 193-207

8. **Plaintiff's Time off from Work**

    - Plaintiff disagrees with the characterization that he was "out from work from May 11 until May 17". Plaintiff was under the care of a Mental Health Professional and a Medical Dr, and Plaintiff provided the Defendant with documentation thereof. The Mental Health Professional, along with Dr Gabor, of who kept Plaintiff off work while under their care, were members of the Defendant's health system, and designated a company health care provider.

    - See Plaintiff's Deposition, Attachment 2A; see Dr. Gabor's return to work slip, and medical report of Dr Jeffrey Gabor, Medical Records of Dr. Jeffrey D. Gabor And Associates, Attachment 3

9. **Plaintiff Notification of Defendant of his Injuries**

    - Plaintiff disagrees that he failed to notify the Defendant of his injuries until his return to work on May 17, 2004. Plaintiff and his union representative attempted to notify Defendant of Plaintiff's injuries on May 10, 2004, but the company management refused to talk with them, or fully investigate the incident. The Defendant refused to allow Plaintiff to make a written report of his injuries, or the incident, until after his release from the doctors' care..

    - Plaintiff agrees that he filed a written incident report on June 14, 2004; Defendant refused to allow Plaintiff to file a written report prior to that time, and only began an investigating the incident when Plaintiff continued to complain regarding the disparate treatment he and Defendant Snyder had received related to the incident and Defendant Amtrak's ongoing discriminatory practices, and retaliation due to his complaints regarding same.

5

- While Plaintiff agrees that the defendants may have drawn a conclusion that he failed to report his injury of May 10, 2004, testimony indicates that Plaintiff attempted to report his injuries immediately to his supervisor, through his union representative, and that supervisor refused to entertain any conversation with plaintiff in the presence of the union representative. Further, Plaintiff disagrees that any investigation was conducted by the Defendant at any time prior to Defendant becoming aware that Plaintiff was claiming that he was being discriminated against.

- See internal Memorandum, Documents Concerning Plaintiff's Notice to Defendants Concerning Discrimination Including EEOC Documents, Attachments 1;, see Plaintiff's Deposition, Attachment 2A; testimony of Mr. Mascetti, union representative, portions of transcript of Arbitration hearing, Attachment 11, pp 193-207; see portions of testimony of Dino Guirfa, portions of transcript of Arbitration Hearing, Attachment 11, pages 146-148, 170-176, 337-340.

10. **Plaintiff's Awareness of Defendant's Policies**

- Plaintiff agrees that he was aware of Defendant's policy regarding the reporting of workplace injuries, and that he complied with this policy.

- Plaintiff does not, however, agree that he had numerous prior workplace injuries during his employment with the Defendant.

- Plaintiff agrees that all Amtrak employees are required by the Company's Standards of Excellence to " immediately report to your supervisor all injuries and illnesses that occur…", and states that Defendant Steven Snyder was his supervisor, and was immediately aware of Plaintiff's injury, and that Defendant Snyder's supervisor, refused to speak with Plaintiff on the date of the incident or investigate the incident, and refused to receive Plaintiff's report of injury

- See internal Memorandum, Documents Concerning Plaintiff's Notice to Defendants Concerning Discrimination Including EEOC Documents Attachments 1, see Plaintiff's Deposition, Attachments 2A; testimony of Mr. Mascetti, union representative, portions of transcript of Arbitration hearing, pp 193-207 See testimony of Pamela Bunch, transcript of Arbitration Hearing, pages 208-231

11. **Defendant Snyder's Violation of Defendant Amtrak's Policies**

- Defendant Amtrak has a policy in place delineating "**Standards of Excellence".**

- Defendant Amtrak has a policy in place entitled "**Anti-Discrimination and Anti-Harassment".** This policy expressly prohibits the use of "epithets, slurs, or negative stereotyping based on race, religion, or other protected characteristics".

6

- In 2003, Defendant Snyder violated Defendant Amtrak's Standards of Excellence policy, and was tested for being under the influence alcohol and /or drugs while on the job. Defendant has failed to produce the results of said testing. In May of 2004, Defendant Snyder violated Defendant Amtrak's "Anti-Discrimination and Anti-Harassment" policy, receiving a demotion and suspension. Defendant Snyder was also disciplined in June of 2004 for violating Defendant Amtrak's "Standards of Excellence" policy as a result of striking Plaintiff with a book, receiving a 2 day suspension, to be served "according to operational commitments"

- In 2005, Defendant Snyder was disciplined for again violating Defendant Amtrak's "Standards of Excellence" policy, receiving a 15 day suspension

- Prior to May 10, 2004, Defendant Snyder repeatedly violated Defendant Amtrak's "Anti-Discrimination and Anti-Harassment" policy, and the employees involved reported same to Defendant Amtrak, making them aware of Defendant Snyder's activities.

- On all occasions preceding the incident with the Plaintiff, Defendant Amtrak took no disciplinary action against Defendant Snyder for violations of the Defendant Amtrak's "Anti-Discrimination and Anti-Harassment" policy.

- On each occasion where Defendant Snyder violated Defendant Amtrak's "Anti-Discrimination and Anti-Harassment", he claimed to have been "joking".

- Had Defendant Amtrak applied their policies in an even-handed manner, application of same would have required that Defendant Snyder be terminated significantly prior to the incident giving rise to this lawsuit.

- See Plaintiff's Deposition, Attachment 2a, Deposition of Doria Washington, Attachment 6, pages 19-36 See testimony of Pamela Bunch, transcript of Arbitration Hearing, Attachment 11 pages 208-231see Deposition of Carlos Alvarez, Attachment 9 pages12-28, 31-33; see Deposition of Harry Charlus, Attachment 8 pages 8-24 ;, see Deposition of Dennis Smith, Attachment 5, pages 5-108; see Deposition of Dawn Marcelle, Attachment 6 pages 7-30 ; See internal management memorandum regarding incident, Documents Concerning Plaintiff's Notice to Defendants Concerning Discrimination Including EEOC Documents, Attachment 1.

12. **Application of Defendant Amtrak's Progressive Discipline Policy**

- Plaintiff disagrees that Amtrak "established" that Plaintiff violated its national systems attendance policy, because at all times relevant to this action Defendant Amtrak had a progressive disciplinary policy in place, which Plaintiff was subject to.

- At the time that Defendant Amtrak made the false allegations against Plaintiff due to his continuing to make complaints of discrimination and disparate treatment, application of Defendant's progressive disciplinary policy to Plaintiff did not require

7

the plaintiff to be terminated, and the attendance issue was not sufficient to justify Plaintiff's termination pursuant to same.

- Plaintiff further states that Defendant Amtrak, while having a progressive discipline policy, applied that policy, and indeed, its policies concerning discrimination and workplace violence, in a disparate manner, depending on the race of the employee.

- See Deposition of See Plaintiff's Deposition, Attachment 2A, see Deposition of Doria Washington, Attachment 6 pages 19-36; see Deposition of Carlos Alvarez, Attachment 9 pages12-28, 31-33 ; see Deposition of Harry Charlus, Attachment 8, pages 8-24; see Deposition of  Dennis Smith, Attachment 5, pages 5-108; see Deposition of  Dawn Marcelle, Attachment 6, pages 7-30 ; See internal management memorandum, Documents Concerning Plaintiff's Notice to Defendants Concerning Discrimination Including EEOC Documents, Attachment 1.

13. **Plaintiffs Absences from Work**

- Plaintiff disagrees as to the characterization of the stated dates of absence and/or tardiness listed by the Defendants as such. The dates listed by the Defendant, particularly May 11-13 2004, were due to the injuries Plaintiff sustained as a result of the acts of Defendant Snyder, and documented by Dr. Gabor as dates that Plaintiff was under his care, as well as that of the Mental Health Professional . The same is true as to the May 16, 2004 date.

- One or more of the remaining  dates listed was excused because a bridge was out and while some supervisors excused such lateness, and the Defendant excused them with regard to its white employees, but not the Plaintiff, a minority, the Defendant is utilizing this date in an attempt to establish that the Plaintiff violated its attendance policy, and to justify its retaliatory actions against the Plaintiff for complaining about its discriminatory practices and patterns of disparate application of its stated and written policies to its minority employees.

- See Plaintiff's testimony, portions of transcript of Arbitration Hearing, Attachment 11, pages 85-101, 123-130 See Plaintiff's Deposition, Attachment 2A; see Deposition of Doria Washington, Attachment 6, pages, 19-36; see Deposition of Carlos Alvarez, Attachment 9, pages12-28, 31-33; se Deposition of Harry Charlus, Attachment 8, pages 8-24 ; see Deposition of  Dennis Smith, Attachment 5, pages 5-108; see Deposition of  Dawn Marcelle, Attachment 7, pages 7-30; See internal management memorandum Documents Concerning Plaintiff's Notice to Defendants Concerning Discrimination Including EEOC Documents, Attachment 1. See testimony of Pamela Bunch, transcript of Arbitration Hearing, Attachment 11, pages 208-231

14. **Defendant Amtrak's Reasons for Terminating Plaintiff**

- Plaintiff disagrees that Defendant Amtrak terminated him for the reasons stated. The Defendant made a pretext decision to terminate the plaintiff based on his race and because he stood up for his civil rights. Plaintiff had a history of standing up and complaining about discriminatory actions of Defendant Amtrak's managers, and the application of the company's policies to its minority employees.

- Plaintiff Agrees that he filed a grievance regarding his termination pursuant to the collective bargaining agreement

- Plaintiff agrees that Defendant Amtrak reinstated him to his position.

- See Plaintiff's Deposition, Attachment 2A; ‚See internal management memorandum Documents Concerning Plaintiff's Notice to Defendants Concerning Discrimination Including EEOC Documents, Attachment 1; see July 2004 letter notifying Plaintiff of his return to work, portions of Plaintiff's personnel file, and Arbitration Award, Attachment 2.

15. **Plaintiff's Filing of EEOC Complaint**

- Plaintiff agrees that he filed, a complaint with the Equal Employment Opportunity Commission, but states the complaint was filed in June of 2005.

- Plaintiff agrees that his Complaint was filed in the Baltimore Office of the EEOC, and that office transmitted it to the DC office because that was the job site location

- Plaintiff disagrees that he is unaware of the exact date that his Complaint was filed with the EEOC. Plaintiff was aware of when he provided the document to the Baltimore office. Plaintiff was unaware of the date that office actually transmitted it for filing to the DC office, nor the date the DC office actually stamped it in as filed. The document, however, speaks for itself, and is stamped with the date of June 22, 2005.

- Plaintiff disagrees that he was unaware of whether his Complaint was actually ever filed with the DC office, as he received a document indicating that the Complaint had indeed been filed.

- Plaintiff agrees that the EEOC issued a Right To Sue letter to him; however the extent that the defendant is implying that the EEOC investigated the charge and made a determination, plaintiff disagrees

- See Plaintiff's Deposition, Attachment 2A; EEOC Complaint Stamped June 22, 2005, Attachment 1, Documents Concerning Plaintiff's Notice to Defendants Concerning Discrimination Including EEOC Documents.

16. **Defendant Retaliated Against Plaintiff Because Plaintiff's Sought to Protect his Civil Rights**

9

- Plaintiff states as an undisputed fact that Defendant Amtrak took and adverse employment action against him because he had a history of objecting to violations of his civil rights while employed with the company, and claimed of discrimination in connection with the way in which the incident with Defendant Snyder had been handled, in that Plaintiff claimed that had he struck Defendant Snyder, he likely would have been taken off the job.

- Plaintiff states as an undisputed fact that he had previously engaged in civil rights activity prior to his termination by writing a letter complaining of discrimination with regard to a February 7, 2003 incident and the fact that he was concerned about his employment with Amtrak

- Plaintiff states as an undisputed fact that he was initially terminated as a result of the attack by Defendant Snyder, and while he was subsequently reinstated, he was denied back pay for time he was out of work, as a punishment, thereby suffering an adverse employment action as the result of Defendant's retaliation.

- See Plaintiff's Deposition, Attachment 2A;See internal management memorandum, and case manager intake form; Documents Concerning Plaintiff's Notice to Defendants Concerning Discrimination Including EEOC Documents, Attachment 1; see July 2004 letter notifying Plaintiff of his return to work, and Arbitration Award, portions of Plaintiff's personnel file, Attachment 2.

17. **Statute of Limitations Applicable to Action**

- Plaintiff states as an undisputed fact that his assault by Defendant Snyder was but one of the acts giving rise to his claim of discrimination, as Plaintiff was aware of Snyder's racist activities towards minority employees over a significant period of time prior to being assaulted.

- Plaintiff states as an undisputed fact that after the assault, Defendant Snyder followed him around the work site, just watching him, and even went so far as to follow Plaintiff to the bathroom. That Defendant Snyder did not speak to him just followed him around.

- Plaintiff states as an undisputed fact that Defendant Snyder never apologized to him.

- Plaintiff states as an undisputed fact that he complained to Amtrak management about Defendant Snyder following him around.

- See Plaintiff's Deposition, Attachment 2A pages 75-79

18. Plaintiff agrees that he filed suit in the US District Court for the District of Columbia on December 30, 2005, naming Amtrak and Steven Snyder as Defendants, and that same stated five (5) Counts.

                                                  Respectfully Submitted,
                                                  **Norris C. Ramsey, P.A.**

                                                  _____
                                                  Norris C. Ramsey
                                                  4105 Springdale Avenue
                                                  Baltimore, Maryland 21207